(No. 37891.—

The People of the State of Illinois, Defendant in Error, *vs.* Robert Ulrich, Plaintiff in Error.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

Bellows, Bellows and Magidson, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

A jury in the criminal court of Cook County found defendant, Robert Ulrich, guilty of taking indecent liberties with Lenora Gunneson, an 8-year-old child. After judgment and sentence of 8 to 12 years in the penitentiary he now seeks reversal of the trial court judgment urging (1) insufficiency of evidence, (2) error in admitting evidence of another offense of which he was acquitted and (3) error in admitting testimony of a former police officer concerning the defendant's reputation for truth and veracity at a time 12 years prior to trial.

Two indictments were returned against the defendant; the first charging that on September 18, 1959, he took indecent liberties with a child, Loretta D'Aquilla, the second charging similar acts with Lenora Gunneson. The acts charged in both indictments occurred at the same time and place; the witnesses in both cases were the same. He was first tried and acquitted by a jury in the charge relating to Loretta D'Aquilla. In both cases the defendant claimed mistaken identification.

In this case Mrs. D'Aquilla testified that about 5 o'clock in the afternoon on September 18, 1959, her children were playing with other children in front of their home; that she saw the defendant with a white poodle and the children; that the children asked if they might go for a walk around the block with the man; that she gave her consent and her daughter Loretta came back about 20 minutes later. After talking with Loretta, she then went to see her neighbor Mr. Gunneson. After that she talked to Sergeant Krause at the

police station. The next day she went to the police station with Lenora Gunneson and saw the defendant with a white poodle. Sergeant Krause had called her on September 19 and told her that he had a man he wanted her to look at and to bring Lenora Gunneson with her. The Gunneson girl and Mrs. D'Aquilla went into a room at the police station where they identified the defendant who was alone with the dog.

Lenore Gunneson testified she was 10 years of age and in the fourth grade. She was playing with Loretta and the other children in front of the D'Aquilla home and saw a man with a white poodle. They followed the man around the block and stopped in front of a house that was under construction. The man unlocked the door and they went into a bedroom which had a closet with a sliding door. The man picked her up, lifted her dress and pulled her tights down and then pulled them up. She walked out of the closet and saw Loretta holding the poodle. Loretta then handed her the poodle and Loretta went into the closet with the man. On cross-examination she stated that the next day she was told by Mrs. D'Aquilla that they had arrested the man with the dog. At the police station Sergeant Krause had told them that they had arrested the man with the poodle and that he was the man who was supposed to have done the act.

Loretta, who testified over defendant's objection, stated she was $6\frac{1}{2}$ years old at the time of the incident and 8 years old at the time of trial. She had been the complaining witness in the case in which the defendant was found not guilty. Her testimony was basically the same as that of the Gunneson girl, stating that the man and Lenora went into a closet, that the man picked up Lenora and put her in the attic, when she got down she gave the poodle to Lenora and then she and the man went into the closet. He pulled down his underpants and hers and wiped wet Kleenex between her legs. He then pulled up her pants and when she heard her mother calling, she ran home.

Sergeant Krause, of the Lincolnwood police, stated

Mrs. D'Aquilla saw him on the evening of September 18. He then made an investigation and saw defendant on September 19 at his home, asked him where he had been the night before, and defendant told him he had been to a dance at a hotel with a girl. He saw a white poodle at his feet and then took defendant to the police station. The same day he took Mrs. D'Aquilla and the Gunneson girl to a room in the station where the defendant was sitting with his dog.

The defendant testified he lived with his mother and brother, had an apricot-colored poodle, had worked at Bell and Howell on the day in question from 7 o'clock in the morning until 3:30 in the afternoon, arrived home about 3:45 P.M. and took his dog out for a walk. He denied owning a red shirt, which had been identified by other witnesses, and also denied molesting any children or taking any children into a house under construction. He stated that he had not been out of the house for more than 5 minutes with the dog, did not leave the house that night, did not go to a dance, and denied telling Sergeant Krause that he had been to a dance the night before. He stated that he saw Mrs. D'Aquilla and the Gunneson girl at the police station and that neither one identified him.

Harry Larson, a State's witness, testified on rebuttal that he was presently employed as a security officer at the Conrad Hilton Hotel, had been a police officer in Chicago for 36 years, believed defendant lived on the north side of the city between 1949 and 1950 and that during that time he had occasion to know where defendant lived. He stated that he had been assigned to the Shakespeare Avenue police station, had occasion to know the reputation of the defendant, prior to the incident, for truth and veracity was bad. On cross-examination he stated that he had met defendant in about 1950, did not meet him from 1945 to 1949, did not meet him from 1951 to 1961, and did not know where he lived in 1959 and 1960. He did not talk to anyone about the defendant in 1958, 1959, 1960 and 1961.

The defendant's contention that the evidence is not sufficient to sustain the judgment of conviction is based upon the identification of the defendant. He contends that the identification by Lenora Gunneson and Mrs. D'Aquilla was influenced by the police officer who told them that the man who supposedly molested the children was in custody, and that the identification was further influenced by having them view the defendant alone in a room. It is true that where conviction of the crime of indecent liberties is based upon the testimony of a child, the evidence must be corroborated or must be otherwise clear and convincing. (*People* v. *Williams*, 414 Ill. 414; *People* v. *Herzberger*, 372 Ill. 251.) However, this court in *People* v. *Crenshaw*, 15 Ill.2d 458, stated: "There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person, [citations] and where an accused is not selected from a group, such fact does not render evidence of identification incompetent, but only affects its weight. [Citations.] Similarly, where claim is made that identification was induced by police suggestion that the guilty party is in custody, we have stated such procedure does not completely destroy the evidence of identification, but affects only its weight and credibility." Here Lenore identified the defendant at the police station the next day after the indecent liberties took place and again identified him at the trial. Her identification is corroborated by Mrs. D'Aquilla who stated that she saw the defendant in front of her house when he was showing the children his white poodle, identified him at the police station the following day, and again at the trial. From the record it appears that Lenora's testimony is not only clear and convincing, but corroborated, and not shaken on cross-examination. Under these circumstances we will not disturb the finding of the jury as to the sufficiency of the identification.

In regard to the contention that the trial court erred in

permitting the introduction of testimony as to the defendant's reputation for truth and veracity, it is argued that, since the basis of such testimony was formed twelve years prior to trial with no proof of its continuation, it is too remote. Remoteness is the specific objection which was made and overruled by the trial court. Cross-examination of Harry L. Larson, the former Chicago police officer, who testified to the bad reputation of the defendant for truth and veracity, revealed that Larson did not see the defendant from 1951 to 1960, did not talk to him from 1958 to the time of the trial in April, 1961, did not know where he lived from 1958 to April, 1961, and did not talk to anyone about the defendant from 1958 to the time of the trial. The fact that Larson did not see the defendant from 1951 to 1961 and did not talk to him from 1958 to April, 1961, has no bearing upon the defendant's reputation for truth and veracity in his community. The cross-examination with regard to Larson's knowledge of defendant's neighborhood was limited to the 3-year period of 1958 through 1960. This, of course, has no bearing on Larson's conversations with members of the community in which defendant resided regarding defendant's reputation for truth and veracity for any other period of time. As was stated in the case of *People* v. *Reeves,* 360 Ill. 55, 65, reputation witnesses must have adequate knowledge about the subject of their testimony but the claim of that knowledge is *prima facie* sufficient. Here the defendant did not establish by cross-examination that the reputation witness had knowledge that related only to a period 12 years prior to the trial. The objection of remoteness was therefore properly overruled by the trial court. 3 Wigmore on Evidence, sec. 928.

Turning our attention to the claim that the People were estopped from introducing evidence of another alleged act of indecent liberties where the defendant had previously been found not guilty of that offense, it has been previously noted that this question involves the propriety of admitting

the testimony of the D'Aquilla girl which related to herself and not to the Gunneson girl. The act of indecent liberties with reference to the Gunneson girl took place before the acts involving the D'Aquilla girl of which the defendant was found blameless by the jury. Regarding the limitations on the doctrine of estoppel by verdict, this court stated in *Hoffman* v. *Hoffman*, 330 Ill. 413, 418: "To operate as an estoppel by verdict it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment of record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact."

It is our opinion that the doctrine of estoppel by verdict does not apply here as the D'Aquilla trial presented the jury with more fact issues than the sole question of identification. That jury could have reached its verdict of not guilty on such other fact issues as whether or not the acts with the child did in fact occur, or whether or not they were done with a specific intent of arousing his sexual desires. The defendant in relying upon the doctrine of estoppel by verdict cites the case of *People* v. *Haran*, 27 Ill.2d 229. There the defendant was indicted for the separate crimes of statutory rape, and crime against nature. Both crimes involved the same woman. However, that case is distinguishable from the present case because both crimes involved the same person, and the prior finding of not guilty as to the rape charge was held to preclude and estop the State, in the subsequent trial on the charge of crime against nature, from introducing evidence that the defendant had intercourse with her.

It is, therefore, apparent that the *Haran* case is not controlling when applied to the acts herein.

However, it is defendant's further contention that the testimony of Loretta D'Aquilla with regard to the details of the offense which took place immediately after the offense with the Gunneson girl is prejudicial and could not help but inflame the minds of the jurors against the defendant. The State contends that the evidence of the two separate crimes was admissible because of the inherent difficulty in separating the evidence of one crime from the other. The State says that for lack of a better term the evidence is deemed admissible as part of the *res gestae.* Considering the fact that the defendant had already been found not guilty of indecent liberties in the D'Aquilla case, in considering the acts in the Gunneson case, fairness commands that the present charge stand or fall upon its own facts. Testimony by the D'Aquilla girl regarding the acts allegedly committed upon her in the closet and out of the view of the Gunneson girl certainly could not serve to prove a factual issue as to defendant's guilt concerning the Gunneson girl and was highly prejudicial. We are of the opinion that under the particular circumstances herein the admission of such testimony is an abuse of discretion resulting in prejudicial error.

The judgment of the criminal court of Cook County is reversed and this cause remanded for a new trial.

*Reversed and remanded.*