**People of the State of Illinois, Plaintiff-Appellee, v. Richard L. Wendt, Defendant-Appellant.**

**Gen. No. 51,748.**

First District, Second Division.

December 30, 1968.

Rehearing denied January 29, 1969.

Bellows, Bellows & Magidson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendant, Richard L. Wendt, was indicted for the crime of indecent liberties with a child in violation of Ill Rev Stats 1965, c 38, § 11–4. After a trial without a jury, he was found guilty of that crime and sentenced

194

to a term of 1 to 3 years in the penitentiary. He appeals, contending that he was not proved guilty beyond a reasonable doubt; that the trial court erred in excluding evidence of the reputation of the complaining witness; that the trial court erred in allowing evidence of other offenses; and that the sentence imposed was harsh and should be reduced.

**Evidence for the State:**

The complaining witness testified that he was 10 years old, in fifth grade, and lived with his parents. He met the defendant about two years before trial. On August 5, 1965, he went to the defendant's apartment after school about 3:45 p. m. and entered by means of a key which had been given to him by defendant. He played records and cleaned the apartment until the defendant arrived about 4:15 p. m. Complainant then watched T. V. and ate a supper which he had prepared. After supper he did some homework, worked on a shortwave set for about an hour, and went to bed at 9:00 p. m. He and defendant slept in the same bed, and they both wore pajamas. The air conditioner was on, but shortly after they went to bed defendant stated that he was hot; he took off his pajamas and told the complainant to do the same. At that point, defendant played with the complainant's penis for approximately one-half hour. Another boy about the same age was in the apartment that night. The other boy slept on the couch in the living room, and the door between the living room and the bedroom was closed. At about 6:00 a. m. the following morning, defendant drove the complainant home and the other boy to Hanover Islands. A few days afterwards, complainant's father directed him to tell what had happened, stating that he already knew about it. Complainant did not know how his father had found out about the incident. Complainant had slept with the defendant on numerous prior occasions, and defendant had touched his

penis many times before. Defendant had bought him presents at times and gave him an allowance of fifty cents a week. The defendant, at times, had struck the complainant around his thighs with a belt, a paddle, or his open hand, usually before defendant touched him in his private parts. Defendant warned him not to tell anyone about what was going on in the apartment or he would punish him.

On cross-examination, complainant stated that at the preliminary hearing he had testified that just he and defendant were present on the night in question, and that defendant had touched his penis for "five or more minutes." He could not remember whether they went to the Allied Radio store on that particular evening. He was not attending school on the day in question, and the homework he was doing on that evening was part of a long-range summer assignment.

Complainant's mother testified that four days after the above incident, she and her husband went to defendant's apartment. They were there from about 10:00 p. m. until 11:00 p. m. When accused, defendant at first denied doing anything, but then admitted fondling their child, stating that there was nothing wrong with what he did. On cross-examination, she testified that defendant was a Sunday School teacher and otherwise active in their Church; that they had known him for some time; that she knew that he had struck her son with a paddle, but that she did not know about a belt. She denied being intoxicated on the evening they went to defendant's apartment, but stated that she could have had something to drink.

The father of the complainant also testified that he and his wife went to defendant's apartment four days after the incident. After being accused by the father, the defendant at first denied, then admitted fondling the complainant. Defendant explained the term "fondling" as playing with their son's penis. Defendant said

196

that what he had done "wasn't so terrible." The father told the defendant that if he would not turn himself in to the police or to a mental institution within 24 hours, he would notify the police. On cross-examination, the father stated that he did not remember whether he and his wife had anything to drink, and that he had no knowledge that defendant had on occasion struck his son. Although stating that defendant had their permission to discipline the children, he would never have given permission to defendant to strike them with any instrument. His children also had permission to stay at defendant's apartment, and defendant had on one occasion lent him money.

Leonard J. Keating, youth officer of the Cook County Sheriff's Police Department testified that he talked to defendant for about an hour after his arrest. Defendant admitted that he had slept in the nude with the complainant on the night in question, and with other children on different occasions. He denied ever fondling the complainant, but stated that he probably rolled over in bed at times and touched the children on their private parts, but "they never objected so he just let it go."

It was stipulated that defendant was 26 years of age.

**Evidence for the Defense:**

Reverend Mr. William Bartley, pastor of the Church where defendant taught, testified that the defendant's general reputation for good morals, chastity, truth and veracity was good. Complainant and his family were members of his congregation. John Frederickson, a school teacher and head of the Sunday School, also testified that defendant's general reputation for good morals, chastity, truth and veracity, was good.

David Hewing, a boy of the approximate age of complainant, testified that he had met the complainant through the defendant, and had also slept at the defendant's apartment on several occasions. On the

197

night in question the three of them went to Allied Radio store to buy a birthday present for the complainant and his brother, and then returned to the apartment, where he and the defendant worked on a coil in the bedroom. The complainant fell asleep in the living room, and David and the defendant later went to sleep in the bedroom.

Steven Mendak, the principal of the school attended by the complainant, testified that he did not have any knowledge of school work assigned to the complainant during the summer. His testimony concerning the complainant's reputation for truth and veracity was stricken by the trial judge.

Thomas Maher, a fellow employee of the defendant, testified that defendant's reputation for truth, veracity, morals and chastity was good. He also testified that he had heard Officer Keating say at the police station that the complainant's father was intoxicated when he signed the complaint.

Emily Peyer testified that her 13-year-old son had been in the fun program at the Church under the supervision of the defendant, and that defendant's general reputation for good morals and chastity was good.

Defendant's mother, Lucille Wendt, testified that during a recess in the courtroom at the time of the preliminary hearing, she overheard a conversation between the complainant and his parents. She heard the complainant say that the defendant did not do anything to him, and his father agreed, but asserted that they had to go through with it. The complainant also told his mother that defendant did not do anything, but his mother told him to be quiet.

Defendant testified that he was a production engineer at Motorola; that he had been a member of the Apostles Lutheran Church for the past three years; that he was a Sunday School teacher and the director of the fun program there. He had known the complainant and his

198

family for about two and a half years, and that he had seen the father strike the complainant and his brother on several occasions. He had given the father a key to the apartment some time previously. On the night in question, he, the complainant and David Hewing went to his apartment together. After supper, they went to Allied Radio to buy some gifts. When they returned, the complainant said that he was tired and went to sleep on the living room couch, while defendant and David were in the bedroom working with the gifts. The complainant called the defendant because he had a heat rash on his abdomen, and defendant rubbed some talcum powder on the rash. Later, the defendant and David went to sleep in the bedroom. In the morning, defendant drove the two boys to the complainant's home. A few days later, the parents of complainant came to his home and accused him of the act in question, which act he denied. They both threatened him if he would not commit himself to an institution. Three days later he was arrested. He never touched the boy's private parts.

On cross-examination, the defendant stated that he had slept in the same bed with complainant but not on the night in question. On the nights that they slept in the same bed, complainant sometimes was in the nude, but not the defendant. He struck the complainant sometimes with his hands, and sometimes with a paddle, a "seater-heater." He did not remember, but it was possible that he had also struck complainant with a belt.

On rebuttal, Officer Keating testified that he never said that complainant's father was drunk at the time he signed the complaint. The complainant and his parents testified on rebuttal that they did not have such a conversation in the courtroom at the preliminary hearing as testified by defendant's mother. Complainant also denied that he had a rash or that defendant applied talcum powder to a rash on the night in question.

199

Defendant's first contention on this appeal is that he was not proved guilty of the crime charged beyond a reasonable doubt. We do not agree.

■ Where a conviction for the crime of indecent liberties is based on the testimony of the complaining witness, and the defendant denies the charge, the testimony of that witness must be clear and convincing or must be corroborated by other substantial evidence. People v. Kolden, 25 Ill2d 327, 185 NE2d 170 (1962).

■ The defendant maintains that the testimony of the complainant was not clear and convincing, citing several inconsistencies in his testimony. At trial, the boy testified that he went to defendant's apartment after school; on cross-examination he stated that school was not then in session and that he was not attending summer school. At the preliminary hearing he testified that he and the defendant were alone on the evening in question; at trial he stated that David Hewing was also present. At the preliminary hearing, the complainant testified that he and the defendant went to Allied Radio store that evening, while at trial he could not remember whether they went to the store; at the preliminary hearing he testified that defendant was wearing pajamas during the indecent act, while at trial he stated that defendant removed them before the occurrence. The complainant tried to explain some of the inconsistencies at trial; for example, when he testified that he and defendant were alone he thought that the question referred to who was present in the bedroom rather than in the apartment. However, when viewed in the light of all the surrounding circumstances, we cannot attach the importance to these inconsistencies that the defendant does. The testimony from which the inconsistencies arise deals only with collateral events. Moreover the relationship between the boy and defendant, the frequency with which he stayed at defendant's apartment and the interval between the occurrence, the preliminary

200

hearing, and the trial would explain the minor inaccuracies of the boy's testimony.

■ However, defendant points out an inconsistency in the complaining witness's testimony which is more relevant to the indecent act for which he has been convicted. At the preliminary hearing, the complainant testified that the act took "five or more minutes," while at trial he stated that it took about a half hour. While the testimony concerns the act, we do not believe that a boy of 10 years would pay much attention to the passage of time during the occurrence. In fact we would expect the complainant's recollection of the time element to be somewhat hazy. The trial judge made an express finding that he recognized the difficulty of cases such as these, but that the testimony of the complaining witness was clear, and convincing and mature. We believe that the record supports that finding.

Defendant cites People v. Martin, 380 Ill 328, 44 NE 2d 49 (1942); People v. Pazell, 399 Ill 462, 78 NE2d 212 (1948); and People v. Williams, 414 Ill 414, 111 NE 2d 343 (1953), in support of his contention that the testimony of the complaining witness was not clear and convincing. But these cases are all distinguishable from the case at bar. In the Martin case, the conviction was reversed on the basis of an insufficient identification of the defendant by a six-year-old girl who did not recognize defendant until prompted by her mother. In the Pazell case, the Supreme Court found that the testimony of a seven-year-old girl was unsatisfactory. In the Williams case, the court found that the testimony of a 13-year-old complainant was unsatisfactory in that she was uncertain as to whether the attempted intercourse caused any pain; further there was testimony by her mother as to bias upon the part of the complainant against the defendant. Neither of these factors are applicable to the present case.

201

■ ■ The credibility of the witnesses and the resolution of the conflicting testimony was a matter for the trial court, and this court will not substitute its judgment for that of the trial court. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809 (1956); People v. Kirilenko, 1 Ill2d 90, 115 NE2d 297 (1953).

■ Although our determination that the complainant's testimony was clear and convincing makes any discussion of whether there was corroboration of his testimony unnecessary, we wish to note that the testimony of the parents as to admissions made by defendant constituted corroboration. We are not persuaded that the difference in their testimony negates its corroborative value. The mother testified that they both accused defendant of molesting their child. She testified that, after first denying it, the defendant finally admitted fondling the child, but that he did not explain what he meant by fondling. The father testified that under his questioning, defendant did explain what he meant by fondling— that he handled the boy's penis. We believe that the testimony of the parents corroborated the boy's testimony. Moreover, the complainant's testimony is further corroborated by the testimony of the police officer as to admissions made by defendant. The officer testified that, while denying the act of indecent liberties, defendant admitted sleeping with the complainant in the nude on the night in question, and also stated that on occasions he may have rolled over in bed and touched boys with whom he was sleeping on their private parts, but that they never objected.

The defendant next contends that the trial court erred in excluding evidence of the reputation of the complaining witness. The principal of the school attended by the complainant was called by the defense to testify about the complainant's reputation for truth and veracity in the community.

After the witness testified that he had an idea as to the complainant's reputation in the community, the following colloquy took place during the examination of the witness:

THE COURT: "He has answered that he knows the general reputation for truth and veracity in and about the school. Is that correct, sir?"

THE WITNESS: "That is right, sir."

THE COURT: "He may answer as to what it is."

ATTORNEY FOR DEFENSE: "Would you state what that reputation is?"

THE WITNESS: "It's questionable because times where I have had contacts"—

STATE'S ATTORNEY: "Objection to questionable and any relation of any individual instances. It is just a yes or no."

THE COURT: "Individual instances are not admissible."

ATTORNEY FOR DEFENSE: "Just state the general reputation."

THE WITNESS: "It's not the best."

THE COURT: "Objection sustained. Is it good or bad, sir?"

THE WITNESS: "Your honor, it is somewhere in between. There are times when to my knowledge he has told the truth and there have been other times when he hasn't and"—

THE COURT: "But as to—does he really have a general reputation, Mr. Principal? Does the youngster have a general reputation?"

THE WITNESS: "I will go back to the records, as a teacher that has had him I will say that he has not a good"—

STATE'S ATTORNEY: "Object."

THE WITNESS: "He doesn't have a good reputation."

On cross-examination, the following took place:

STATES ATTORNEY: "So when you say that he does not have a good reputation for truth and veracity you are expressing your personal opinion, is that correct?"

WITNESS: "I am expressing the opinion that I have in my working with Terry in situations in the school."

At this point, the trial court, at the request of the assistant State's Attorney, struck the witness's testimony as to the complainant's reputation for truth and honesty. Thereafter, counsel for the defense examined the witness further and the following occurred:

DEFENSE: "Are you aware of his general reputation in and about the school?"

STATE'S ATTORNEY: "The question has been asked and answered already."

WITNESS: "Yes, sir."

DEFENSE: "He says he is, Your Honor."

STATE'S ATTORNEY: "The question has been asked and answered."

THE COURT: "Yes, he answered that he did but at the same time he testifies and I think I understand his attitude. It is based upon personal opin-

ion based upon specific instances, is that right, sir?"

WITNESS: "Yes, sir, that is right."

■ A witness may testify concerning his knowledge of another witness's general reputation in a particular community for truth and veracity. However, the testimony may not be based upon the personal opinion of the witness, and must not be concerned with specific instances as opposed to general reputation. People v. Lehner, 326 Ill 216, 157 NE 211 (1927).

■ An examination of the above testimony clearly indicates that the principal's knowledge of the complainant's reputation was based upon personal opinion arising out of specific encounters with the boy. Defendant argues that the witness was asked a series of confusing questions, and consequently, gave confusing answers, but that his opinion as to defendant's reputation should have been allowed to stand. We find that neither the questions nor the answers were confusing; rather they reveal that the witness was not able to testify as to the complainant's general reputation even in the academic community. The trial court did not err in excluding the principal's testimony concerning the complainant's reputation for truth and veracity.

The defendant next argues that the trial court erred in admitting evidence concerning other acts of indecent liberties between the complainant and the defendant, and evidence that defendant had administered beatings to the complainant.

■ ■ Over defendant's objection, the complainant testified that the defendant had touched him "around his penis or private parts" for a period of 2 years prior to August 5, 1965. Defendant concedes that evidence of similar acts of indecent liberties with the same complainant is proper for the purpose of showing the rela-

205

tionship and familiarity between the parties. People v. Pazell, 399 Ill 462, 78 NE2d 212 (1948); People v. Sampson, 1 Ill2d 399, 115 NE2d 627 (1953). But he argues that these other acts were not sufficiently described, either as to time and place, or as to the details of each act, citing People v. Rongetti, 338 Ill 56, 170 NE 14 (1929).

However, in People v. Kraus, 395 Ill 233, 69 NE2d 885 (1946), the Supreme Court held that the testimony of a 13-year-old complainant that acts similar to the one charged had occurred several times over a period of one year was admissible, not for the purpose of showing an offense other than the one charged, but to show the relationship that existed between the parties. Likewise in the instant case, the complainant's testimony as to the prior indecent acts was properly admitted.

■■ The complainant also testified that defendant struck him about the legs and rear end with a belt and board (the latter was characterized as a "seater-heater" by both parties) a couple of times a week for about two years. Although we do not accept the State's argument that this evidence constituted proof of defendant's warped sexual desires, we believe that it was admissible to show the relationship and familiarity between the two parties.

■■ Defendant finally contends that the sentence imposed by the trial court was unnecessarily severe, arguing in effect that it was error to deny probation to defendant. The Supreme Court has stated that the power of reviewing courts to reduce sentences (Supreme Court Rule 615(b) (4)), (Ill Rev Stats 1967, c 110A, § 615) should be exercised with considerable caution. People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965). Although defendant had an excellent background, he was convicted of a serious crime. We believe that the trial court acted within its sound discretion in denying the application for probation and in imposing a sentence.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.