THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BRANDYS, Defendant-Appellant—(GERALD DeMORROW, Defendant.)

(No. 12070;

Fourth District—November 29, 1973.

Eugene B. Culberson, of Groppi, Dougherty & McNamara, of Danville, for appellant.

Richard J. Doyle, State's Attorney, of Danville (John R. McClory, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendant was found guilty in a jury trial on the charges of aggravated kidnapping and unlawful restraint of a twelve-year-old female. Judgment of conviction was entered for each offense. Defendant was sentenced only for aggravated kidnapping to an indeterminate term of 10 to 25 years. Defendant appeals.

Defendant contends that the trial court erred in refusing to suppress evidence obtained from the search of his automobile; that he was not proven guilty beyond a reasonable doubt; and that the sentence imposed was excessive. In light of the first two averred errors, defendant requests his conviction be reversed outright, or, in the alternative, be reversed and remanded for a new trial.

The facts are as follows. At 8:00 P.M. on August 1, 1971, Cindy Jean Drollinger was forced into an automobile by defendants, James Brandys and Gerald DeMorrow. The defendants drove the victim out into the country and sexually assaulted her. The abduction took place in front of the victim's home in Hoopeston, Illinois. Jackie Morse, who was with Cindy Jean when the abduction occurred, notified Cindy's father of the incident. Mr. Drollinger reported the incident to the authorities.

At approximately 9:15 P.M., defendant's automobile was stopped in Milford, Illinois by the police. The defendants answered routine questions and explained that they were from out of state and that they were lost. Shortly after defendants were stopped, Mr. Drollinger and Mr. Jerry Yonkers, who were out searching for Cindy Jean, drove up and parked behind defendant's car. Drollinger conversed with the defendants, asking them whether either of them had seen his daughter. Drollinger and Yonkers noticed a large damp spot in the middle of the back seat of the automobile. Drollinger requested Brandys to open the trunk of his car, which he did, but the trunk was empty. The policeman

checked on the origin of the automobile and determined that it was not stolen. He then permitted the defendants to leave because he felt there was no reason for detaining them further. Cindy Jean was eventually returned to her parents around 11:30 P.M. that evening, whereupon she was taken to the hospital and examined.

On August 4, 1971, officer Mannin of the Hoopeston police department, Cindy Jean Drollinger, Jackie Morse, and their parents, went to defendant's resident in Three Oaks, Michigan. The purpose of the trip was to determine whether Cindy Jean and Jackie could identify defendant as one of the assailants and his automobile as the vehicle involved in the abduction. The two girls were able to positively identify defendant's car.

Both defendants were indicted on September 10, 1971. The counts relative to this case were Counts I and IV, which charged defendants with aggravated kidnapping and unlawful restraint, respectively. The defendants, Brandys and DeMorrow, pleaded not guilty to all charges. On February 29, 1972, the defendants filed a motion to suppress evidence. The motion submitted that defendant Brandys' automobile was subjected to a warrantless search and seizure. The defendants requested that all evidence resulting from the search and seizure be suppressed.

At the hearing on the motion, six witnesses testified. Brandys' wife, Mrs. Betty Brandys, stated that around 11:00 A.M. on August 4, 1971, a policeman knocked on her door and asked to see Mr. Brandys. She informed the officer that her husband was not at home. She testified that her husband's automobile was parked in their private driveway, and that the police officer from Illinois had approached the car and opened the back door and looked around; that he walked to the driver's side, opened the front door and looked around again. The same officer asked her how long the bucket seats located in the front of the car had been there. According to Mrs. Brandys, the officer presented no search or arrest warrants. She further stated that since these events had upset her and the fact that she was five months pregnant at that time, Mrs. Brandys decided to go to her mother's home. Mr. Jerry Koth, a neighbor, agreed to drive her in defendant's car. En route a state trooper stopped the automobile. The trooper informed Mrs. Brandys that he was detaining them in order to determine whether the automobile contained opened alcoholic beverages. Mrs. Brandys testified that she informed the officer that none was in the car, but the trooper informed her he wanted to impound the automobile so that it could be searched. She said, "Do I have any choice?" And, according to her, the officer replied, "No, you don't." Mr. Koth was then directed to proceed to the State Police Post where the automobile was impounded. She stated that she was present

four or five days later when the car was searched. The authorities returned the car to her a week later with the back seat of the car missing.
· Mr. Koth took the stand on behalf of defendant. He corroborated the testimony of Mrs. Brandys concerning the events that transpired on the public highway.

Officer Mannin testified that he and trooper DenHouten, Mr. James Drollinger, Mr. Morse, Cindy Drollinger and Jackie Morse, went to the home of Mr. and Mrs. James Brandys on August 4, 1971. Both Cindy and Jackie observed the defendant's car from a public street; and that they positively identified the car as the vehicle used in the kidnapping. He stated that he looked through the car window while on defendant's premises and saw two large spots located on the rear seat; but that he did not open any door of the automobile while it was parked in the driveway; and no one present opened any of these doors. He also noticed that the front seats of the car had been changed from bench seats to bucket seats from the time it was first observed by Mr. Drollinger on the roadside outside of Milford, Illinois. In his conversation with Mrs. Brandys, he informed her that Mr. Brandys was a suspect in the case under investigation and that he wanted to talk to him. Once informed that defendant was not at home, he stated he left and returned to the State Police Post.

Mannin averred that he and trooper DenHouten eventually decided to return to the Brandys' residence in order to see if defendant had returned. En route they saw defendant's automobile being driven on the public highway. They stopped the vehicle to ask Mrs. Brandys if the car could be impounded until a search warrant could be secured. Mannin noted that when Mrs. Brandys was asked if she would consent to the impoundment of the vehicle, she was cooperative and did not inquire as to whether she had any choice in the matter. Mannin further stated that pursuant to a search warrant, the car was searched on August 5, 1971, and that the back seat of the automobile was seized along with various hair fragments and other materials found in its carpet.

Trooper DenHouten corroborated the testimony of officer Mannin. With reference to the seizure on the highway, he denied telling Mrs. Brandys that the vehicle was being detained to determine whether alcohol was present therein. He also stated he did not coerce her to agree to the impoundment.
· Mr. Drollinger substantiated the testimony of the two officers. However, in rebuttal, Mr. Andrew Brandys, the defendant's father, said that he saw one of the police officers open the car door, look under·the front seat and lean into the back seat from the front door. He stated that the officers asked him about the bucket seats that were in the. front of the

car and he replied that as far as he knew they had always been in the car.

At the conclusion of the testimony, the court denied defendant's motion to suppress the evidence. The court found that the police officers had not opened the door of defendant's automobile or entered it at anytime while on defendant's private property; and that the observations of the interior of defendant's automobile were made in plain view, therefore did not constitute a search.

After a jury trial, Brandys was found guilty on Counts I and IV. He filed a post-trial motion contending that the evidence was insufficient to establish his identity beyond a reasonable doubt and that the offense of kidnapping was not established due to a failure to prove confinement. The motion was denied. Defendant then submitted a motion for probation which was also denied. After a hearing in aggravation and mitigation, Brandys was sentenced to an indeterminate term of 10 to 25 years for the offense of aggravated kidnapping.

Defendant first contends that the observations made of the interior of his automobile by the authorities while it was located on his premises was a warrantless search proscribed by the fourth amendment. Defendant submits that *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022, is dispositive.

The facts of *Coolidge* are distinguishable from this case. In *Coolidge*, defendant's home and automobile were under surveillance for several days. The police knew of the exact location of the automobile and planned all along to seize it. When defendant was arrested, his automobile was also seized and taken to the police station whereupon it was searched. The Supreme Court held that the fruits of the warrantless search and seizure were improperly admitted at the trial. In discussing the state's argument that the plain view exception justified the seizure of defendant's automobile, the court noted that the plain view doctrine cannot be used to overcome the duty of securing a warrant, especially where the discovery of items seized is anticipated and the necessity of securing said warrant is not obviated because exigent circumstances were not present. 403 U.S. 443, 470.

In the case at bar, the authorities were engaged in a routine investigation. Defendant's automobile had positively been identified as the vehicle used in the aggravated kidnapping. Police went to defendant's home in order to question him concerning his possible connection with the crime. While on defendant's property, the authorities observed the interior of the automobile that was in plain view. The trial court found that when the police made the observations in question, defendant's automobile was not opened and the authorities were on defendant's

premises in the course of a lawfully conducted investigation. Therefore, the court concluded that these observations did not invade defendant's zone of privacy protected by the fourth amendment. *People v. Nunn,* 7 Ill.App.3d 601, 288 N.E.2d 88.

■■ These findings were based on the testimony of the witnesses that appeared at the hearing on defendant's motion to suppress. Accordingly, we are confronted with an issue of credibility of these witnesses, and a reviewing court must accept the findings of a trial court on questions of credibility unless they are unreasonable. (*People v. Holloman,* 46 Ill.2d 311, 317, 263 N.E.2d 7.) We are bound to accept the testimony given by the state's witnesses as true since it is not unreasonable. Assuming the truthfulness of the testimony of the police officers, we must concur in the conclusions of the trial court that the officers made the contested observations in plain view. The Supreme Court has held that an officer who has the right to be where he is and observes an object in an automobile in plain view, that observation is not a search and thus does not fall within the proscription of unreasonable search and seizure. *Coolidge v. Hampshire, supra.*

Defendant next contends that the consent given by his wife to the authorities permitting them to impound his automobile was involuntary; therefore all fruits of that seizure should be suppressed. We cannot agree.

In the hearing on defendant's motion to suppress, the trial court found that defendant's wife had voluntarily consented to the seizure. The record reveals that in its findings the trial court complied with the test laid down in *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875. In *Schneckloth,* the court held:

> "* * * [T]hat when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Voluntariness is a question of fact to be determined from all the circumstances,* and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent * * *." (Emphasis added.)

Notwithstanding Mrs. Brandys' voluntary consent concerning the impoundment of defendant's automobile, we find that exigent circumstances existed which permitted the seizure of said vehicle without a warrant.

■■ In *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct.

1975, it was stated that an automobile can be searched without a warrant under circumstances which would not justify the warrantless search of a home or office, provided there was probable cause to believe the automobile contained articles that were entitled to be seized. The circumstances which furnish probable cause to search a particular automobile are most often unforeseen and the opportunity to search is fleeting due to the mobility of the vehicle.

■■ Mannin and DenHouten observed the defendant's vehicle traveling on a public highway as they were en route to defendant's home. The trooper recognized the woman in the vehicle to be Mrs. Brandys and believed that the man driving was defendant. Moreover, the authorities knew that the interior of the car had recently been altered and were fearful that the back seat would ultimately be removed if the car was not impounded. All of these facts constituted exigent circumstances that would permit the summary seizure of defendant's automobile. *People v. Peter*, 55 Ill.2d 443.

■■ As to defendant's next contention that the evidence does not establish his guilt beyond a reasonable doubt, we cannot agree. The State must prove a defendant's guilt beyond a reasonable doubt, however, the positive testimony of just one credible witness is enough to convict a defendant. (*People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182.) Defendant was positively identified as the assailant of Cindy Drollinger. His vehicle was also identified as the one involved in the abduction. The fact his testimony conflicted with that of the State's witnesses created a question of credibility for the jury. It is clear from the verdict that the jury chose to resolve this conflict in favor of the State. This court cannot substitute its judgment for that of a jury on issues of credibility unless proof was so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Johnson*, 75 Ill.App.2d 42, 221 N.E.2d 59.

Lastly, defendant asserts that the sentence of 10 to 25 years for aggravated kidnapping other than for ransom was excessive. Under Illinois Revised Statutes, 1972 Supp., chapter 38, paragraph 10—2(b)(2), aggravated kidnapping is a Class I felony. The maximum term of incarceration for a Class I felony is any term in excess of 4 years (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(b)(2)). The minimum is 4 years "unless the court, having regard to the nature and circumstances of the offense, history and character of the defendant, sets a higher minimum term". Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(2).

■■ We find that the sentence imposed in this case is not excessive. Defendant was convicted of aggravated kidnapping of a twelve-year-old female. At trial, the evidence was established that the victim was physically brutalized. It was brought out at the hearing in aggravation and

mitigation that the defendant had a criminal record and had been involved in at least one other crime of violence. His past record and the nature and circumstances surrounding the commission of the crime for which he stands convicted indicates defendant falls within the provisions of chapter 38, paragraph 1005—8—1(c)(2), that permits the exacting of a minimum sentence greater than the 4 years prescribed therein.

The judgment of the circuit court of Vermilion County is affirmed.

Affirmed.

SMITH and SIMKINS, JJ., concur.