THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANCES EUGENE BOLYARD, Defendant-Appellant.

(No. 12588;

Fourth District—November 14, 1974.

SIMKINS, J., dissenting.

John F. McNichols and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

. The defendant was found guilty of indecent liberties with a 13-year-old girl after a bench trial in the circuit court of Macon County. Sentenced to an indeterminate term of 6 to 18 years, he now contends (1) that his guilt was not established beyond a reasonable doubt and (2) that comments of the trial court suggest that a greater sentence was imposed because the defendant applied for probation. Neither assignment of error merits a new trial or a reimposition of sentence.

The State's evidence is supplied by three witnesses. Judy Goodwin, victim of the indecent liberties, lived with her mother where the defendant, a 38-year-old man, had been staying for approximately 10 days. Judy's mother was at work and her brothers were outside. Judy and the defendant were alone in the house. Judy testified that the defendant began to talk to her about matters dealing with sex, illicit conduct and its relationship to drinking, that the defendant made advances to her by placing his hand on her back and rubbing, and that during the course of the time while they were alone, he had consumed a 6-pack of beer. He locked the front door and the dining room door, and forced her into her mother's bedroom; when she attempted to resist the defendant, she was unsuccessful, and the defendant pulled Judy's shorts and underpants down and attempted intercourse. Failing the first time, he applied vaseline to himself and successfully performed the act of sexual intercourse. While using the vaseline, Judy testified that he held her down with his legs. After completion of the episode, there was a knock on the door. The defendant answered it and left with a man who came to the door. Judy told her mother of the incident the next day after the defendant had gone to work. She was thoroughly cross-examined and there are inconsistencies in her statement as testified by her mother, the police officer, and the story she told to an investigator for the Illinois Defender Project as to some of the chronology and as to the number of times that she was penetrated.

The mother stated that she arrived home from work around 11 or 11:30 P.M., and that the defendant was the only one present. She went to her bedroom to change her clothing and noticed that the bed was messed up and a jar of vaseline was out of its usual place. Judy and her

brothers had spent the night with their baby sitter, a neighbor, and when Judy returned home the next morning, her mother testified that she appeared to be avoiding the defendant and that this was unusual. After the defendant left for work, the mother asked Judy what was wrong, and she stated that she got a funny look on her face and stated that she had been raped by the defendant.

The neighbor lady with whom the children stayed likewise corroborated the testimony as to the arrival of Judy around 6 P.M., that she was nervous, and that she was wearing a blouse that was tied and shorts. Judy did not mention the incident to her, nor did she mention the vaseline incident either to her mother or to the police officer, nor did she tell the police officer about the removal of her blouse and fondling of her breasts by the defendant.

The defendant testified that it was Judy who brought up the subject of sex into their conversation and that she brought a sex education book from her mother's bedroom and began to show it to him. She showed him pictures of the male and female genital organs and of the female breasts. He testified that she lifted her halter and revealed her breasts to him as a comparison to one of the pictures in the book. Defendant stated that he told her to stop her conduct and to put the book away. He denied taking any indecent liberties with her and denied ever going into the bedroom. He conceded that he had consumed a 6-pack of beer. Judy denied in toto his testimony on the stand in rebuttal.

■■ It is at once apparent that we here deal with the credibility of witnesses. The general rule of course is that where a conviction for indecent liberties with a child is based upon that child's testimony, the evidence must be clear and convincing or otherwise corroborated. (*People v. Ulrich*, 30 Ill.2d 94, 195 N.E.2d 180.) In the resolution of this well established doctrine, we may first note that there was corroboration by the mother as to the condition of the bed and the vaseline jar, that the victim appeared to avoid the defendant the next morning, and the testimony of the baby sitter that Judy appeared nervous when she arrived at her home. Aside from this, however, the trial judge found the evidence clear and convincing without corroboration and so stated. He characterized the story of the defendant as incredible. It is but a truism to say that the resolution to be here made depends upon the credibility of the witnesses and the authorities on this point are legion. (See 10A Ill. Digest *Credibility of Witnesses* 742(1) (1969).) It has likewise been stated that in charges of this character, the duty of the reviewing court is to carefully examine the evidence, and that due weight must be given to the judgment of the trier of facts as to the credibility of the witnesses and its finding of guilt will not be disturbed unless the evi-

dence is so unreasonable as to leave a reasonable doubt of the defendant's guilt. *People v. Curry,* 56 Ill.2d 162, 306 N.E.2d 292.

It should be noted in the case at bar that the testimony of the prosecutrix, notwithstanding some apparent inconsistencies, did establish all of the essential elements of the offense and, as to this extent, it was unshaken. (*People v. Partee,* 17 Ill.App.3d 166, 308 N.E.2d 18; *People v. Wendt,* 104 Ill.App.2d 192, 244 N.E.2d 384.) While the facts vary from case to case, as well as the nature and the severity of the acts constituting the crime, we need to remember that the crux of section 11—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, ¶ 11—4) is to protect immature children from being deliberately and knowingly victimized by adults.

█ █ The charge of indecent liberties is easy to make and hard to defend. Many elements may be taken into consideration, such as the delay in making a complaint. (*People v. Padfield,* 16 Ill.App.3d 1011, 307 N.E.2d 183.) The nature of the complaint and the circumstances testified to, to have viability, depend upon the credibility of the witnesses. Some of Judy's uncertainty may well originate from the embarrassing nature of the offense. She had engaged in an activity she knew to be improper. This embarrassment was compounded due to the nature of the relationship between the defendant and Judy's mother and the fact that the defendant literally resided in the same residence with Judy for some 10 days. A delay, therefore, of a little over 1 day under the circumstances here related is neither persuasive nor controlling. This court cannot substitute its judgment for that of the trier of fact on the issue of credibility unless the proof was so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Brandys,* 15 Ill.App.3d 379, 304 N.E.2d 471.

The defendant next argues that his sentence should be reduced because of the court's announced sentencing policy, as it was based on principles no longer conforming to accepted sentencing practices. This issue arises from a comment made by the court on the presentence hearing. At this hearing, the defendant requested probation and it was denied. In denying probation, the trial judge commented that some years back in that circuit there was an inflexible policy that any crimes involving physical and sexual violence were simply not probationable, and that the lawyers in that day didn't even request probation. He stated, "The net effect of submitting the probation request at that time was only to increase the sentence of your crime. This was a matter that was well understood by the bar of the Sixth Circuit. In recent years perhaps that policy has been relaxed somewhat; although personally I still subscribe

to it." From this statement, the defendant argues that the trial court invited the defendant to apply for probation with the avowed purpose of thus laying a foundation for a heavier sentence, which was then imposed. We regard the statement as a passing statement of past conditions with a recognition of new and changed policies with which the court did not agree, but clearly recognized and presumably followed.

■■ In *People v. Watts*, 19 Ill.App.3d 733, 312 N.E.2d 672, a 22-year-old defendant was acquitted of the charge of rape and kidnapping by a jury, but found guilty of indecent liberties with a 16-year-old girl. In that case, the defendant had no previous record, was 22 years of age, and had been acquitted of any charges involving violence, bruises or threat of force. The trial judge imposed a sentence of 6 to 10 years which the reviewing court reduced to a term of 4 to 10 years. In the case at bar, we recognize as the court did in *Watts* that the crime of indecent liberties is a Class 1 felony under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par 1005—8—1(c)(2)) and the minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term. In the case at bar we have a 38-year-old man with no prior felony convictions, although he had been convicted of passing bad checks on three different occasions. The victim was a 13-year-old girl. It is true that that she was not beaten, permanently disfigured nor threatened with loss of life. On the other hand, the record indicates that the defendant used force and that the victim was in fear. In imposing sentence, it is apparent that the court was unhappy with the defendant's testimony. It characterized the defendant's testimony about the book on sex as one of the strangest that he had ever heard. His judgment of guilt was based exclusively on that credibility. The trial court had the opportunity to see and observe the parties and is in a better position to make a determination of sentencing than is this court. The minimum sentence fixed by the statute is 4 years and is a Class 1 felony. This factor indicates legislative displeasure with this type of crime. (*People v. Brown*, 107 Ill.App.2d 406, 246 N.E.2d 61.) Many factors properly considered in the trial court are not available to us here. We cannot say from this record that this sentence because of the nature of the crime is so excessive as to indicate an arbitrary abuse of discretion in sentencing, or shocks the conscience of this court.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE SIMKINS dissenting:

I concur in the majority opinion insofar as it affirms the conviction. The record shows that on November 9, 1973, the presentence hearing was held and the defendant requested to be admitted to probation. In denying this request the trial judge stated:

"There was a time some years back in this court when the then judges of the court had what amounted to an inflexible policy that any crimes involving physical violence, any crimes involving sexual violence, were simply not probationable, and the lawyers in that day didn't even submit probation requests. The net effect of submitting a probation request at that time was only to increase the sentence of your client. This was a matter that was well understood by the bar of the Sixth Circuit. In recent years perhaps that policy has been relaxed somewhat, *although personally I still subscribe to it.* * * *" (Emphasis added.)

He then imposed the sentence in question. If plain words import the meanings ordinarily attached to them this defendant's sentence was increased by his request for probation, and if this be true it constitutes an abuse of judicial discretion which should not be countenanced by this court. I do not regard the statement in question as a statement of a new policy with which the trial judge did not agree "but * * * presumably followed." In any event I am not content to speculate about the matter. I would affirm the conviction, but remand for resentencing before a different judge.