People of the State of Illinois, Defendant in Error, v. Wavery Smith, Plaintiff in Error.

**Gen. No. 49,644.**

First District, First Division.

April 12, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Chester P. Majewski and James J. Doherty, Assistant Public Defenders, of counsel), for plaintiff in error.

■■■■■■■■

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Wavery Smith, in a jury trial, was convicted of the crime of rape and sentenced to the penitentiary for a term of 30 to 40 years. He urges reversal of his conviction on the grounds that he was not proven guilty beyond a reasonable doubt; that he did not receive a fair trial, and that the court committed reversible error in refusing to give a certain instruction.

The evidence in the cause reveals that the complainant and her mother were walking in a northerly direction on the east side of the 1500 block of south St. Louis Avenue in Chicago about 2:00 o'clock on the morning of June 5, 1962. They were searching for her daughter who had gone to a show and had not returned home.

Complainant testified that there was no one else in sight when defendant approached them from the rear; that she and her mother separated thinking "he was going to pass on by"; that defendant grabbed her neck with his right hand, and her mother's neck with his left; that he asked them for money, but she told him they didn't have any; that he threatened to kill them if they did not obey him; that he then dragged them into a gangway and made her mother lie on the ground and made her lie across her mother's legs; that her mother was lying on her left side with her legs curved out; that the mother was arranged in a kind of curve on the ground, and that she was straight; that her head was east and her mother's head was ahead of hers. "I was lying across her legs."

125

Complainant further testified that they begged defendant to leave them alone, but he told them to shut up or they would be killed. He kept pushing her mother's head down. He was on his knees. He lifted complainant's dress and spread her legs with his free left hand. His right hand was still around her neck and contained an unknown instrument which she thought was a knife. He forced her to insert his penis into her vagina. "His penis was in me just a few minutes. I don't think he discharged in me." She estimated the entire incident took about four or five minutes, and then a man appeared with a flashlight and gun.

The mother's testimony as to their initial encounter with defendant was similiar to that of her daughter. She stated that when defendant grabbed them her daughter said, "Take your hands off me; you don't know me, and I don't know you." They were forced into a basement, and when the mother tried to escape defendant told her, "You fool with me, if you holler I will cut your neck, . . . I will cut your neck off and leave you lay here." She further stated that he had her lie down on her daughter's feet, but that she did not know what happened next.

About this time Leonard Jackson and his wife Tanzella were in bed in their second floor apartment at 1515 S. St. Louis. Mrs. Jackson testified she was awakened by voices in the adjacent gangway, went to the window, and heard a woman's voice saying, "Please don't do this to me," and "I just have one dollar." She also heard a male voice ordering someone to lie down. She awakened her husband who dressed, told her to telephone the police, and proceeded downstairs carrying a flashlight and his grandson's toy pistol. Prior thereto, Jackson stated that he had also gone to the window and saw a man and two women

126

in the gangway and heard one of the woman say, "I ain't got no money."

Jackson further testified that when he got downstairs one woman was lying on the ground; that defendant was on top of her; that he flashed his light on defendant, and ordered him to stand; that he noticed defendant's pants were open and when defendant started to fasten them, he (Jackson) said, "Don't fasten up your pants. Wait until the officer gets here"; that he heard defendant reply, "This is my old lady. I caught her in a car with another guy." He said he kept defendant sitting on an adjacent bench by pointing his toy pistol at him, concealing its identity by shining his flashlight in defendant's face until the police arrived.

In response to Mrs. Jackson's call officer Steven Moore of the Chicago Police Department arrived on the scene a few minutes later. He testified that he observed complainant and her mother crying; that the mother's coat showed dirt on the left side and the back of complainant's coat was rather dirty; that defendant's clothes were shabby, his pants legs dirty, his pants open, and "you could see his penis."

The officer further stated that he asked complainant if defendant was the man who raped her and that she she replied "Yes"; and that he heard defendant say, "Why don't you tell them the truth? Why don't you tell them who I am? This is my old lady. . . . Hold on, wait a minute, tell them who I am, tell who I am." On cross-examination it was brought out that defendant's pants and shorts had been taken to the Police Department Crime Laboratory.

Complainant had also testified that when asked by officer Moore if defendant was the man who raped her she said "Yes," and further that she had never seen defendant before that night. Complainant was taken directly to Cook County Hospital. At the trial it was

stipulated that she was examined and that no sperm was found. Defendant offered no evidence in his behalf.

In contending that the State failed to prove him guilty beyond a reasonable doubt defendant argues (1) that complainant's testimony was inherently improbable, and required that a directed verdict be entered in his favor; (2) that there were discrepancies in the testimony of complainant and her mother; and (3) that the circumstances failed to show that rape had occurred.

Defendant argues that the evidence regarding penetration is insufficient to support his conviction since the weight and credibility of the State's evidence has been impaired by contradictions appearing in the testimony. Some contradictions do appear when comparing the testimony of complainant and her mother. The mother testified that the incident occurred in a basement. However, complainant, the Jacksons and officer Moore all agreed that the correct location was a gangway.

Complainant's mother also testified that she was lying across her daughter's feet. Complainant testified that she was lying across her mother's legs, and the testimony of Mr. Jackson revealed that when he came upon them in the gangway he found defendant on top of complainant and her mother lying on the ground. Defendant points out that the mother testified she did not see the rape. Rather than being contradictory, the fact that she could not view the rape corroborates her daughter's testimony which indicated she was lying across her mother's legs and that the latter had had her face down.

The fact that the mother's testimony varied from that of her daughter regarding some details is insignificant since the jury was at liberty to weigh all of her testimony in the light of other testimony,

128

specifically that given by complainant, as to the entire incident, and the corroboration in several important respects by disinterested witnesses, the Jacksons, as well as by officer Moore. The mere fact that there is minor conflicting evidence does not justify reversal. People v. Meyers, 412 Ill 136, 105 NE2d 746 (1952); People v. Davis, 10 Ill2d 430, 140 NE2d 675 (1957).

Defendant asserts that the circumstances could be reasonably construed as a quarrel over money between a man and his "old lady," or at most, a robbery rather than a rape. He points out that Mr. Jackson did not testify that he observed defendant having sexual intercourse with complainant. This argument is not persuasive as the sufficiency of the evidence of penetration does not depend on Jackson's testimony alone. His testimony is corroborative and gives credence to complainant's account of the incident. The fact that Mr. Jackson saw the women on the ground with defendant on top of complainant is certainly not consistent with an argument over money with his "old lady." Defendant's further assertion that if a rape had taken place the Jacksons would have heard and testified to much more damaging statements than those recited, is disposed of by the fact that they did not testify to having heard the entire conversation in the gangway, and is explained by the fact that Mrs. Jackson had gone to telephone the police and Mr. Jackson was dressing himself in preparation for going outside.

Next, defendant argues that complainant did not vent a spontaneous expression of outraged feelings or complaint at her first opportunity, and that it was not until officer Moore arrived and asked her a leading and suggestive question did the word "rape" appear. Such delay, it is argued, indicates that the evidence has little if any probative value and is consistent with a spur of the moment "frame up."

In rape cases it is proper to adduce evidence indicating that complainant made prompt complaint concerning the outrage which had been perpetrated upon her, and it is proper to permit the person to whom she complained to give testimony that the complaint was made. Evidence of such complaint is admitted on the theory that the natural instinct of a female thus outraged prompts her to express indignation at the injury inflicted upon her, and it is deemed relevant on the ground that it corroborates her statement that she was assaulted. To be admissible the complaint of the offense must be made without inconsistent or unexplained delay and must be a spontaneous declaration of injury. The admission of such complaint is an exception to the general rule that hearsay evidence is not admissible and does not extend to crimes other than rape. People v. Davis, 10 Ill2d 430, 140 NE2d 675.

In the instant case, only a few minutes elapsed between the time Mr. Jackson apprehended defendant, who was then lying on top of complainant with his pants open, and the arrival of officer Moore. During that interval there was some evidence to indicate that complainant spoke to Mrs. Jackson. The fact that complainant apparently did not mention to her or Mr. Jackson that she had been raped by defendant is not significant because it was reasonable for her to assume that under the circumstances the Jacksons realized that a rape had been committed.

When officer Moore arrived he saw that both women were crying; that defendant's pants were open and his sex organ exposed. Thus, as we view the circumstances appearing in the record we find that the fact that complainant did not make an immediate complaint to the Jacksons and that her implication of defendant first came in response to a question put to her by officer Moore almost immediately upon arriving

at the scene, places her testimony as well as that of officer Moore within the limitations prescribed by the rule.

▓ We believe the overall character of complainant's unimpeached testimony is clear and convincing, and is corroborated in material respects by the Jacksons and officer Moore. It was clearly adequate. People v. Davis, 10 Ill2d 430, 140 NE2d 675; People v. Elder, 382 Ill 388, 47 NE2d 694 (1943). It is well settled law, for which no authority need be cited, that the determination of the credibility of the witnesses and the weight, if any, to be accorded their testimony is for the trier of fact and unless the evidence can be said to be so unsatisfactory as to justify a reasonable doubt of defendant's guilt, a reviewing court will not substitute its judgment for that of the jury who have observed the witnesses, heard them testify, and were in a better position than this court to determine where the truth lies.

In further arguing that penetration has not been proven, defendant points out that his pants and shorts were taken to the police crime laboratory but were never produced at trial, from which he concludes that the failure on the part of the State to produce evidence within its possession raises a presumption that had such evidence been produced it would have been unfavorable to the State, and therefore, the court committed reversible error in refusing to instruct the jury on said presumption. Defendant contends that the jury could have reasonably concluded that the pants and shorts contained neither vaginal nor seminal stains, and that if penetration did in fact occur as complainant testified, then in the absence of vaginal lubrication there would of necessity have to be vaginal irritation. On the latter point defendant asserts that the stipulation that no spermatozoa was found in

131

complainant's vagina is proof that there was no vaginal irritation. The argument is a nonsequitur.

 Complainant, the mother of three, did not sense an emission during intercourse. A prompt medical analysis of her vagina revealed no spermatozoa. The stipulation did not determine whether or not there was vaginal irritation due to an absence of vaginal lubrication. Section 11–1(b) of the Criminal Code (Ill Rev Stats (1963) c 38, § 11–1(b)) provides that:

> Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ.

Thus, codifying the previous case law, proof of the slightest penetration is sufficient to sustain a conviction for rape. People v. Schultz, 260 Ill 35, 102 NE 1045 (1913); People v. Ardelean, 368 Ill 274, 13 NE2d 976 (1938). The State adduced sufficient evidence to warrant the submission of the question of penetration to the jury. The record does not indicate that the pants and shorts were unavailable to the defendant or that he requested their production. Where the evidence is available to both parties such presumption does not exist. The trial court did not err in failing to so instruct the jury.

 Reviewing this record we find the evidence adduced adequately supports the verdict of the jury and sustains the conviction.

Finally, defendant contends that he was deprived of a fair trial because of the prosecutor's prejudicial conduct; that during the examination of complainant's mother the prosecutor indulged in a series of questions which were in part leading; that defense counsel made objections to these questions which the court, in the main, sustained but did not admonish the prosecutor as defendant requested. Complainant's mother was a

difficult witness and was not responsive to many questions. When the prosecutor expressed disagreement with the court's ruling defense counsel objected to the remarks and the court, directing its attention to the prosecutor, said, "I have ruled, Mr. Porter." When the examination of the mother was concluded, defense counsel made an intemperate suggestion that the prosecutor be sworn as a witness in order that he might be cross-examined. The prosecutor addressed the court, stating, "I am willing to abide by the court's rulings, but I am not willing to allow him to make statements uncalled for." The court ruled that "(t)he remark of Mr. Doherty will be stricken and the jury instructed to disregard it."

Defense counsel suggests that the prosecutor's misconduct in examining complainant's mother was compounded by the fact that the court, though not approving of the prosecutor's behavior, failed to admonish him, and prejudiced defendant by rebuking his counsel, from which the jury could have been led to believe that the court was hostile toward him.

It is true, as pointed out in People v. Marino, 414 Ill 445, 111 NE2d 534 (1953), that jurors are ever watchful of the attitude of the trial judge and his influence upon them is necessarily and properly of great weight. Here, however, the trial judge was eminently fair and impartial and in our opinion did not convey any impression or demonstration of hostility toward defendant or his counsel.

For the reasons stated the judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.