People of the State of Illinois, Defendant in Error, v. John Washington, Plaintiff in Error.

Gen. No. 50,670.

First District, Fourth Division.

May 13, 1966.

Mordecai J. Sugarman, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and George Samels, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, John Washington, was indicted for the crimes of rape and robbery, found guilty in a bench trial, and sentenced by the Criminal Division of the Circuit

Court of Cook County to serve a term in the Illinois State Penitentiary of 20 years for rape and 5 to 10 years for robbery. The sentences were to run concurrently. From that finding and sentencing the defendant brings this appeal, and he urges as grounds for reversal (1) that the trial was conducted in a prejudicial manner; and (2) that the evidence was not sufficient to support a finding of guilty. It therefore becomes necessary for this court to review the evidence.

Mrs. Janna Williams, the victim, testified that she was on her way home from work at the Post Office at about midnight on December 19, 1960; that as she entered the hallway to her residence at 7203 Yale Avenue, Chicago, the defendant grabbed her and struck her in the face; that she screamed and the defendant again struck her and took her to the back of the building, threw her on the ground, tore off her underwear and had intercourse with her. She testified that he then took her purse and asked if she had any money; that he took her wallet out of the purse, took her change purse out of her jacket pocket, and told her not to get up until he had left. She stated that he had taken a $5 bill, five singles and about thirty cents; that after he left she got up, went to her apartment on the third floor, and was let into the apartment by her mother. Police officers were downstairs by that time, and they were told to come up to the third floor.

Police Officer Utter testified that when he came to the door of complainant's residence he found a woman's shoe; that when he went to the third floor he was told by the complainant what had happened to her; that her clothing was mussed up and she had marks on her face; that he noticed her shoes were missing and that the back of her coat was soiled. The police took her down to their car, then went to the back of the building and gathered up the articles that were strewn there—a bag

455

or purse, its "contents," and her pants. The police stated that the scene of the incident was a "basement landing" which was covered by an overhead, on which particular spot no snow had fallen, although fresh footprints were found at the rear of the building in the snow which had recently fallen. The police followed the footprints from the scene of the crime across the street [Yale Avenue] into a gangway to the building where the defendant lived. They found a woman's pink wallet and change purse in the gangway.

The police then went to the apartment of the defendant and when they saw him he was wearing a brown zippered jacket. When they searched him the police found a $5 bill and five singles on his person. Officer Murray testified that defendant's shoes were very wet. When they told the defendant to get his hat he replied that he didn't wear a hat but wore a "bandanna" on his head. The complainant had testified that the man who accosted and raped her wore a scarf on his head. The complainant was taken to Englewood Hospital for examination, and the defendant was taken directly to the police station; later the complainant came to the police station and identified the defendant in a lineup. Defendant's trousers were taken from him, inventoried and sent to the Chicago Police Crime Laboratory, together with a handkerchief taken from the pocket of the trousers.

At the trial a microanalyst employed by the Chicago Police Crime Laboratory testified that defendant's trousers had a white crust on the front of them which, when examined, was found to be a seminal fluid stain of dead sperm.

The defendant testified at the trial that on December 18, 1960, the night in question, he had shot pool at 63rd and Normal, having arrived there at about 9:30 p. m.; that he left there and took a bus to 69th Street where he went into the 69th Street poolroom and played pool until about 11:20 or 11:30; that thereafter he

456

walked to his home at 7724 Wentworth Avenue; that it was snowing and he took about 10 or 12 minutes to get to his home; that on his way he saw two officers in a police car. He testified that he was wearing a gray overcoat, but nothing on his head. He stated that the trousers he was wearing had spots on them. He further testified that at the time he was arrested he had a five-dollar bill and six one-dollar bills in his pocket; that the officers came to his house about half an hour after midnight; that they asked him what kind of coat he was wearing and he told them it was a gray overcoat, and added that he had three or four overcoats, including one which was a tannish brown; that his shoes were dry at the time and that he had on the same shoes he had been wearing earlier that evening. He denied raping or robbing the complaining witness and denied telling the officers that he wore a "bandanna" on his head instead of a hat.

Johnella Burton testified on behalf of the defendant that she saw him at his house on the 18th of December at about 11:00 p. m.; that she and the defendant had come from a bowling alley to his house; that she left the defendant the following day about noon, and that she had noticed there was a stain on the front of his trousers.

█ The defendant first argues that the court allowed private investigation and private knowledge to affect the determination of the case and he bases that on the fact that at the beginning of the trial the defendant had requested the court to ask his grandfather or his family if he could get a paid lawyer and the court stated that the defendant's family had told him they had no money. The public defender had been previously appointed for the defendant, and when called for trial the defendant asked for a lawyer from the Bar Association, which request the court denied. The defendant in this court argues that the statement of the court with reference to the inability of the defendant's family to pay for a law-

yer indicated that the court must have made some private investigation. That, of course, does not follow at all. The court had previously tried and acquitted the defendant on a different charge and could easily have obtained the information in question at the time of the previous trial. See People v. Brown, 64 Ill App2d 203, 212 NE2d 275.

██ Defendant also urges that the fact that the court refused to substitute an attorney from the Bar Association for the public defender and to continue his trial, indicated that the court was prejudiced against him. There was nothing in the record which would indicate that the court's refusal to continue the case further or to appoint a different attorney was an abuse of his discretion. People v. Clark, 9 Ill2d 46, 137 NE2d 54; People v. Jones, 51 Ill App2d 391, 201 NE2d 194.

██ ██ There is nothing in the record to indicate that the court showed "an abrupt, hostile manner towards the defendant." As a matter of fact, after the discussion with the court concerning defendant's lawyer, when defendant was properly advised by the court as to his right to a jury trial, the defendant stated, "I know you are a fair Judge because you tried me then. I knows that myself. I will waive the jury." The court again stated the defendant's constitutional right to a jury trial, and the defendant signed a jury waiver. The court made various remarks during the time the evidence was being heard, none of which went beyond the proper functions of a trial court in a bench trial. In People v. Wesley, 18 Ill2d 138, 163 NE2d 500, the Supreme Court said:

". . . A trial judge has the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure.
"The propriety of judicial examination is determined by the circumstances of each case. . . ."

In that case, as in the instant case, the trial judge was justified in making such inquiries as he did.

■ We find that there was no abuse of discretion on the part of the trial judge, nor was there any indicated hostility towards the defendant. There is no indication in the record before us that this point was raised before the trial judge, and there is no allegation that the defendant's counsel at the trial was incompetent, nor does the record so indicate. Under those circumstances, even if there had been any objectionable conduct on the part of the trial judge [which we fail to find], the defendant would have waived it.

■ At the time of the argument of defendant's attorney the court interrupted him and questioned him about defendant's testimony that he had walked four or five blocks in the snow and that his shoes were dry at the time he was arrested. This would seem to be within the rights of a court trying a case without a jury.

■ The defendant also points out that on direct examination the complaining witness stated that she had two five-dollar bills in her change purse; however, she immediately corrected it on her redirect examination, a matter which the trial court undoubtedly properly considered.

■■ It is further argued in this court that the evidence was not sufficient to prove either that a rape and robbery had been committed against the complaining witness or that the defendant was the culprit. In the trial defendant's counsel stated to the court that the fact that the witness had been raped and robbed was not contested; that the only issue was as to whether or not the defendant was guilty of the crimes. The testimony of the complaining witness was definite and we have no quarrel with counsel's statement that where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness should be corroborated

459

by some other evidence, facts or circumstances in the case. In this case the testimony of the complaining witness was corroborated by the fact that the police officer followed the trail of the defendant and found, in a gangway near his home, a wallet and change purse which were identified as belonging to the complaining witness.

At the time the police arrested the defendant they brought him to the police car where the complaining witness sat, and asked her if he was the man who had previously raped and robbed her, and she then identified him. The argument is made that this is not a proper identification because, even though he was subsequently picked out of a lineup by the complaining witness, the latter was an "enforced" identification. While it is not clear, apparently the defendant is arguing here that in any case where a crime has been committed and the police arrest a person because of a description given to them by the complainant, they cannot bring that person before the complainant unless they have him in a lineup. If that should be declared to be the law, then the squad cars will have to have with them a truck containing a variety of persons so that they can have a lineup on the spot. Such an argument is not logical.

It is also argued that there is no corroboration that the complaining witness had actually been raped, and it is properly stated in the defendant's brief that in order to sustain a conviction for rape proof of the completed act of sexual intercourse is unnecessary—the slightest penetration is sufficient. People v. Schultz, 260 Ill 35, 102 NE 1045; People v. Ardelean, 368 Ill 274, 13 NE2d 976. However, the defendant argues that it must be proved by the State that the act was against the will of the victim and that penetration occurred, and stresses the fact that there was no evidence introduced by the State as to what was shown by the examination of the complaining witness at Engle-

wood Hospital. That argument answers itself. Unless there was a completed act of sexual intercourse, under the circumstances of this case, it would be hard to believe that evidence of the examination would be of any value whatsoever. As to the requirement that the proof must show that the act was committed by force and against the will of the complainant, the evidence is that the complaining witness was grabbed from behind at the time she had opened the door to enter the building in which she lived; that the complainant started screaming; that the defendant hit her in the face and she fell down; and when she continued screaming he hit her again over the left eye and the bridge of the nose; and that he then dragged her to the back of the building where the act occurred. Officer Utter testified that when he talked to the complaining witness shortly after the incident, her nose was beginning to swell and she already had the markings of a "mouse" under one eye; that her shoes were off and that the back of her coat was dirty.

The first answer is the fact that at the trial defendant's counsel admitted that the complaining witness was raped and robbed, and consequently that question cannot properly be raised here. However, in any case, the facts in evidence clearly indicate both rape and robbery. The fact that the complaining witness screamed at the time defendant first grabbed her; that thereupon the defendant struck her and she screamed again; that the defendant then struck her so severely that she bore marks of the blows on her face, was sufficient to enable the trier of the fact to determine that the power of the complainant to resist was overcome, either by actual violence physically applied, or by putting her in such fear as to overcome her will, or both. We have carefully considered the cases cited by the defendant and find that they are not applicable because of factual differences. The law governing the degree of force re-

461

quired in a rape case is laid down in People v. Elder, 25 Ill2d 612, 186 NE2d 27, where the Supreme Court said:

> "To warrant a conviction it must be proved beyond a reasonable doubt that the accused had carnal knowledge of the complaining witness forcibly and against her will. (People v. Jeanor, 23 Ill2d 347.) Although there is no fixed rule as to the degree of force required, there must be satisfactory evidence that there was such actual force (People v. Eccarius, 305 Ill 62) or threat of force that the victim's will to resist was overcome. People v. Finley, 22 Ill2d 525."

In that case the defendant told the complainant that she "had" to do as he said and that she "wouldn't get hurt" if she cooperated. At the time the defendant had his right hand in his pocket as though he were concealing a weapon. The court said:

> "She could easily have been in fear of bodily harm or even death from defendant's threatening manner and statements. Her running from the scene at the first opportunity and making immediate outcry to the first persons she found is totally inconsistent with consent. Such actions are quite reasonable for a woman who has through fear been forced to submit to sexual acts. Her testimony was corroborated by the persons to whom she complained, by the finding of the cap in the vacant lot, and by defendant's presence near the scene. . . ."

This case is directly in point.

In People v. Brown, 29 Ill2d 375, 194 NE2d 326, where the defendant was accused of rape and robbery, the complaining witness maintained that this was done at knife-point. On appeal it was urged, among other things,

that the complainant did not offer sufficient resistance. The court said:

> "The evidence in this record does not justify the claim of the defendant that the conduct of Mrs. Thomas does not show sufficient resistance on her part to justify a finding of forcible rape. The facts and the surrounding circumstances clearly reveal that both resistance and an attempt to make an outcry by the prosecutrix would have been futile."

Also see People v. Smith, 32 Ill2d 88, 203 NE2d 879.

 In his reply brief defendant refers to another incident which he considers an indication of the prejudice of the trial court. This point was not raised in his original brief, nor argued, and consequently is waived and will not be considered by us. 2 ILP Appeal and Error, § 561, Supreme Court Rule 39.

In the case before us the evidence was sufficient to prove beyond a reasonable doubt that the defendant was guilty of forcible rape and robbery. The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.