THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUIS T. SIMENTAL (Impleaded), Defendant-Appellant.

(No. 56067;

First District (3rd Division)—April 5, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Justine Knipper and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Frederic I. Chaimson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Louis T. Simental, was charged by indictment with the offense of rape. (Ill. Rev. Stat. 1967, ch. 38, par. 11—1.) After a bench trial in the circuit court of Cook County, the court found defendant guilty as charged and sentenced him to the penitentiary for a term of not less than four nor more than eight years. Defendant appeals.

Defendant contends that the prosecution failed to prove him guilty beyond a reasonable doubt. He also contends that there was a fatal variance between the proof adduced at trial and the bill of particulars as to the time of the commission of the offense.

We affirm.

The complainant, who was the victim of the rape, testified that on the evening of June 20, 1969, she was in a tavern at 43rd Street and Western Avenue in Chicago with her husband. At about 10:30 P.M. that evening after a quarrel had occurred between the complainant and her husband, he left his wife in the tavern and drove off because he was angry. The complainant did not have a car and she waited for a bus at a bus stop outside the tavern. The neighborhood was unfamiliar to her. While she was waiting for the bus it started to get cold, so she went to another tavern at 42nd Street and Western Avenue where she made a telephone call to her mother and another to her sister-in-law. Neither of them had a car available to pick her up. After she drank one-half of a beer at this tavern, she went outside and again waited for a bus. When none came she went to another tavern two blocks from where she had just been.

At this tavern a man, James Erwin, came over to her and introduced himself to her. She told him her name and that was the extent of their conversation. She saw the defendant in the tavern playing pool but said nothing to him. While in the tavern, the complainant had two mixed drinks which contained gin. She also made a telephone call. She left the tavern and waited outside at the corner for a bus. At this point an automobile pulled up to where she was standing. The defendant was driving, and James Erwin was in the front seat on the passenger side. They offered her a ride to her home, and she accepted. She got into the car and sat between the two men.

The defendant turned the car around in a direction which was not consistent with the way to her home which was at 2050 West 23rd Street in Chicago. James Erwin told the complainant that he was not going to take her home and that he was going to rape her. She testified that she started fighting and yelling, and then Erwin hit her in the head and she became unconscious. When she regained consciousness, the car had stopped in the vicinity of Monroe Street and Lake Michigan where she saw sailboats. Both men were out of the car at the time. She locked the passenger door of the car and was attempting to lock the driver's door when the defendant grabbed her by the hair and told her that he was going to kill her if she did not stop screaming. She started screaming again, and the defendant put his hand over her mouth and told her to

shut up or he would smother her. Also he again told her that he was going to kill her.

Erwin entered the car, pulled the pants she was wearing, and ripped the zipper. He threatened her that she had better take off her pants. She took off her slacks and her other under garments. Erwin then forced her to have sexual intercourse with him against her will in the front seat. After Erwin was finished, the defendant forced her to have sexual intercourse with him against her will. After the defendant was finished, the complainant got out of the car and ran, picking up her clothes as she went. At the time of the offense the complainant was 4'11" tall and weighed 95 pounds. The defendant and Erwin were both about 5'11" tall and weighed 180 pounds.

Kenneth Kuczen, who was called as a prosecution witness, testified that on June 21, 1969, between 1:00 A.M. and 3:00 A.M. he was aboard his sailboat when he heard a faint cry for help. After hearing a cry repeated two more times, he got into his car and drove along the breakwater until he saw the complainant lying in a path. He testified that her hair was messed up and that her clothes were disarranged. At this time she told him that two men had raped her and threw her out of the car. Mr. Kuczen called the police. The complainant was taken to the hospital where tests for spermatozoa in her vagina were positive. She also testified that she had a black eye and bruises on her arm as a result of the episode, but there was no medical testimony to that effect at trial.

On July 7, 1969, Officer William Jannotta of the Chicago Police Department arrested the defendant. Officer Jannotta testified that the defendant told him that he was at the scene of the rape and that Erwin had raped the complainant but that he did not have intercourse with her.

In his defense, defendant testified that he and James Erwin picked up the complainant in his car at the corner outside the tavern and drove to the breakwater near Monroe Street and the lake. He further testified that he and Erwin had sexual intercourse with her. He stated that she consented to having sexual intercourse, that he never saw Erwin hit her or threaten her nor did he hit her or threaten her. The defendant maintained that after he had sexual intercourse with her, they were driving her home but after they had gone a few blocks she voluntarily got out of the car. He further testified that before she got out of the car she gave him her address. The defendant denied that he told the police that Erwin had raped her.

■■ Defendant's first contention is that the prosecution failed to prove

him guilty beyond a reasonable doubt. Where a conviction for rape depends upon the testimony of the complainant, her testimony must be clear and convincing or corroborated by other evidence. (*People v. Griggs* (1970), 131 Ill.App.2d 257, 266 N.E.2d 398.) Defendant argues that the testimony of the complainant was inherently unbelievable. He points out that although the complainant testified that she had a black eye and bruises on her arm, there was no corroboration of this by way of medical testimony or the testimony of Mr. Kuczen as to what he observed when he saw her on the path. Although we note that such corroboration is, in fact, absent from the record, there was other evidence relating to the element of force included in the offense of rape which corroborated the clear and convincing testimony of the complainant.

The testimony of Mr. Kuczen that he heard three faint cries for help which prompted him to investigate corroborates the complainant's testimony that she was screaming while the two men were physically abusing her in the car. Other types of corroborative evidence which are present in the instant case are the testimony of Mr. Kuczen as to the disheveled physical appearance of the complainant after she had been raped (*People v. Washington* (1966), 70 Ill.App.2d 452, 217 N.E.2d 356), and his testimony that just after the occurrence she complained to him that two men had raped her. *People v. Vail* (1966), 74 Ill.App.2d 308, 221 N.E.2d 165.

■■ In a bench trial, the sufficiency and weight of the evidence and the question of the credibility of witnesses are matters for the trial court. We will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to defendant's guilt. (*People v. Strong* (1970), 120 Ill.App.2d 52, 256 N.E.2d 76.) We agree with the trial court's appraisal of the credibility of the witnesses, which the court stated before finding the defendant guilty as charged. In attempting to find a flaw in the complainant's testimony, defendant points out that she testified that she got out of the car after she was raped, and Mr. Kuczen testified that she told him that the two men threw her out of the car. Minor inconsistencies in the evidence do not justify reversal. *People v. Smith* (1965), 58 Ill.App.2d 123, 206 N.E.2d 714.

■■ Defendant contends that the prosecution failed to prove an element of the offense of rape, namely, that defendant performed an act of intercourse without the consent of the complainant. In support of this contention defendant points to the complainant's testimony that she took off some of her own clothing and put her slacks back on after the occurrence. Defendant also points to his own testimony that before the

complainant got out of the car, she gave him her address. As we have pointed out earlier, the trial court did not have to believe defendant's testimony; and, in fact, did not.

■■■ There is no definite standard as to the amount of resistance required by the complainant. (*People v. Jackson* (1968), 103 Ill.App.2d 209, 243 N.E.2d 551.) That the complainant took off some of her clothes and later put her slacks back on are isolated facts which do not show consent. The two men repeatedly threatened and abused her. Erwin, who had previously knocked her unconscious, ripped the zipper of her pants while he was trying to forcibly remove them. He then threatened her and she removed some of her clothes. The defendant had grabbed her by the hair and had told her that he was going to kill her. There was a great disparity in size and strength between the complainant and her assailants. Before the rape occurred, the two men had inflicted physical harm on her and there was no requirement that she risk the possibility of further serious harm which seemed imminent at the time because of the two men's continued threats. *People v. Sims* (1972), 5 Ill.App.3d 727, 283 N.E.2d 906.

■■ Defendant's second contention is that there is a fatal variance between the bill of particulars and the proof elicited at trial as to the time at which defendant committed the offense. The prosecution filed a bill of particulars which stated that the rape took place on June 21, 1969, between 12:15 A.M. and 2:45 A.M. Defendant objects to the complainant's testimony relating the events of the night of June 20, 1969, leading up to the rape and her testimony on cross-examination that a statement was correct which she made to the grand jury which implied that the occurrence took place around 12:15 A.M. on June 20, 1969. As to the first objection, the fact that the bill of particulars specifies that the act of rape took place on June 21, 1969, does not preclude the prosecution from introducing evidence of events of June 20, 1969, which led up to the rape.

As to the second objection, it appears that either the complainant was misled by defense attorney's question or the inconsistency in her testimony was inadvertent. Our review of the record discloses that the time of the commission of the offense in the proof at trial conforms to the time period delineated in the bill of particulars. The complainant's testimony and Mr. Kuczen's testimony show the offense occurred at the time charged in the indictment and the bill of particulars.

■■■ The purpose of a bill of particulars is to supplement a sufficient indictment so as to better inform the accused of the nature of the charge against him or to better enable him to present his defense.

(*People v. Patrick* (1967), 38 Ill.2d 255, 230 N.E.2d 843.) Defendant does not contend that he was surprised at trial nor do we find that he suffered any prejudice.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.