THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE G. JOHNSON, Defendant-Appellant.

(No. 58804; ▮▮▮▮)

First District (1st Division)—March 4, 1974.

Paul Bradley, Deputy Defender, of Chicago (Kenneth L. Jones, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James Veldman and Douglas Cannon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant was convicted of murder after a trial by jury, and was sentenced to serve from 25 to 100 years in the Illinois State Penitentiary. On appeal, he raises four issues: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court erred in not granting defendant's motion for a mistrial after the introduction of testimony allegedly linking him to a street gang; (3) the defendant was denied his right to poll the jury, after the verdict against him was entered; and (4) the sentence was excessive. We disagree and affirm.

On the evening of March 12, 1970, the defendant, the deceased and several friends called at the apartment of the deceased's mother, Mrs. Fields, where the deceased's and the defendant's sisters and some small children were already visiting. The principals and their associates had already spent at least part of the afternoon drinking an undetermined quantity of wine, beer, and/or alcohol, and at least one bottle of whisky was brought to the apartment that evening. All the parties had

been present in the apartment for a short time, when a fracas broke out between two of the decedent's friends. The decedent had attempted to stop the fight unsuccessfully, when the defendant screamed at him to remain still and fired a shot from a pistol into the air. (Defendant also had a shotgun in his right hand, but neither weapon was introduced at trial.) This shot was followed by another warning, according to two of the witnesses, and then the second, fatal shot was fired, almost immediately after the first one. Only one of the several witnesses to the occurrence disputes the question of the timing of the shots, and that is the defendant's sister, who stated that the second shot was not fired until some 20 minutes after the first shot. The second shot entered the decedent's brain, next to the right eye, and the defendant left the apartment after the incident, went to his home and then on to his place of employment. He was apprehended by the police early the next morning and charged with the murder. At trial there was no significant testimony relating to any prior ill will existing between the deceased and the defendant, and their relationship was characterized as a friendly one.

The first issue which the defendant raises is that the State failed to prove him guilty beyond a reasonable doubt of the crime of murder. His own testimony at trial, and to some extent that of his sister, attempted to demonstrate that either the gun misfired when it struck the decedent, and/or the decedent accidently moved into the range of the shot, when the defendant attempted to fire a warning shot over his head in order to break up the brawl in the living room. As neither side introduced the weapon into evidence, there is no support in the record for the defendant's assertions that this was an automatic weapon and that it fired twice when the trigger was pulled. This theory is inconsistent with the defendant's sister's testimony that at least twenty minutes elapsed between the two shots, and also with the testimony of two of the witnesses who were standing next to the deceased, and who stated that the defendant issued a warning to the deceased before firing the fatal shot.

■■ In the case of *People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534, the Illinois Supreme Court outlined the standard to be considered by a reviewing court, when determining whether the verdict of a jury should be set aside. It is there stated, at page 232, that:

> "It is peculiarly the province of the jury to weigh the evidence, judge the credibility of witnesses and determine the facts. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt

as to the guilt of the accused. (*People v. Prohaska,* 8 Ill.2d 579, 589-90; *People v. Sustak,* 15 Ill.2d 115, 123; *People v. Ford,* 19 Ill. 2d 466, 480.)"

See also *People v. Brown,* 68 Ill.App.2d 17, 214 N.E.2d 465, and *People v. Smith,* 58 Ill.App.2d 123, 206 N.E.2d 714.

■■ Applying this standard to the facts of the case at bar, we conclude, from the account given by the witnesses who were present at the scene, that the jury had more than enough evidence before them to support the finding of guilty. In spite of the defendant's attempts to point out minor inconsistencies in the testimony of the witnesses to this shooting, the testimony of the participants was surprisingly similar, when the melee, which surrounded the shooting, is considered. Two of the witnesses stated that the defendant threatened the deceased immediately prior to firing the second shot, and the other witnesses, with the exception of the defendant's sister, stated that the decedent was threatened by the defendant prior to the firing of the first shot into the air. With this consistent, factual accounting of the shooting, it certainly was possible for the jury to conclude that the defendant had the intent necessary for the commission of the crime with which he was charged. Therefore we will not disturb the finding of the jury.

Turning then to the defendant's second contention, that the trial judge erred when he refused to grant a mistrial, after the introduction of testimony linking the defendant with a street gang, we conclude that the defendant's assertions are not well founded as the remarks in question were not of a prejudicial or inflammatory nature. The relevant interchange in the testimony of Robert Luckett was as follows:

"Q. Did either you or Thoyce have a knife?

A. No.

Q. During the fight?

A. No.

Q. Had you seen that shotgun any time earlier in the day?

A. No.

Q. Do you know of your own knowledge where Ricko got the shotgun from?

A. Off of 18th and Pulaski, from someone, from some member of the Panthers.

Q. An associate of the Panthers?

A. Yes.

Q. Were you with Ricko when he got the shotgun?

A. Yes.

Q. Do you know where Ricko got the pistol?

A. Yes, the same place.

THE COURT: Pardon me, Mr. Karlin has approached the Bench. You will have an opportunity to cross-examine.

MR. KARLIN: No, I'm not concerned about that."

At this juncture defense counsel approached the bench and protested the remark and the State's Attorney agreed that it should be stricken as unresponsive to the question, as he was merely trying to establish that the defendant had entered the apartment with the gun. There is no indication in the record that the State was attempting to establish an illicit street gang connection of the defendant, and the cases which the defendant cites, dealing with street gang executions are not in point. Certainly the remark, which was promptly stricken, did not in any way prejudice the defendant, so as to necessitate a mistrial. The motion for a mistrial was properly denied in this circumstance.

■■ The third point which the defendant raises, that he was denied his right to poll the jury, after the verdict was read, is also without merit. That the defendant had a right to request the poll is not in question, but where mere inadvertence on the part of the clerk, allowed one juror to be skipped in the original roll call, we do not see the need of ordering a new trial because the defendant claims that he was prejudiced. When the error was discovered, all the jurors were returned, and the juror who was skipped was questioned and answered without hesitancy that this was and continued to be his verdict. To say that the conversation between the bench and the defense attorney in any way influenced this response is without foundation, particularly since, if the reply were less than truthful, another of the jurors or the foreman would have protested. Thus this mistake, not even noticed by the defense, until brought to the court's attention, will not be considered grounds for granting the defendant a new trial.

■■ The defendant's final contention is the sentence given him was excessive in light of the sentences awarded other persons charged with similar crimes. It has often been stated in this court that sentencing is within the peculiar province of the trial judge, and that a reviewing court will not interfere with his discretion unless that discretion has been abused. (*People v. Sockwell*, 7 Ill.App.3d 520, 288 N.E.2d 33; *People v. Loyd*, 125 Ill.App.2d 196, 260 N.E.2d 63.) The sentence which the defendant received was well within the statutory limits prescribed for this offense, and, in our opinion, the court did not abuse its discretion. We therefore will not disturb the sentence.

The judgment of the circuit court of Cook County is therefore affirmed in all respects.

Judgment affirmed.

EGAN, P. J., and GOLDBERG, J., concur.