THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL WAYNE WATTS, Defendant-Appellant.

(Nos. 59122, 59079 cons.;

First District (5th Division)—May 3, 1974.

James J. Doherty, Public Defender, of Chicago (Daniel Miranda, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Frank J. Parkerson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the conviction, after a jury trial, of indecent liberties with a child, and from the sentence of 6 to 10 years.

An eight-count indictment charged defendant with the following crimes: four on complaints of Pattie Pruitt (rape, indecent liberties with a child, contributing to the sexual delinquency of a child, and aggravated kidnapping), and four on complaints of Karen Ogden (attempted rape, attempt to commit indecent liberties with a child, contributing to the sexual delinquency of a child, and aggravated kidnapping, which was later reduced to kidnapping). The trial court directed a verdict of not guilty on the charges of attempted rape, attempt to commit indecent liberties with a child, and contributing to the sexual delinquency of Karen Ogden. The jury found defendant guilty of the charges of indecent liberties with and contributing to the sexual delinquency of Pattie Pruitt, but found him not guilty as to her rape and

kidnapping, and not guilty of the kidnapping of Karen Ogden. The delinquency charge having merged with the indecent liberties charge, defendant was sentenced only on the latter charge.

Defendant contends on appeal that the State did not prove him guilty beyond a reasonable doubt; that he was denied his right to a fair trial by the introduction of certain evidence and the prosecutor's comment thereon; and that his sentence is excessive.

At the trial, the following testimony relevant to the issues on appeal was adduced:

Pattie Pruitt, complainant, testified for the State. She was 14 years old at the time of the alleged offenses. Defendant accosted her and Karen Ogden in Oak Park and forced them into his car at the threat of being shot. While driving through Chicago, defendant told them that although he did not want to pick them up, it was his job to do so. He told them he worked for the Mafia. He said there was a car following them, and that if they were to try to escape they would be picked up by the other men who would not be as patient as defendant. He said that he had been a policeman but had been expelled from the force for failing to give a ticket to someone he knew. He also said he had stolen some money and had been in jail.

After stopping at a gas station in Evanston, he drove them to a motel in South Holland. There he informed them that he had found a microphone in the motel room. He also said he had made contact with his superiors and that he had orders to rape both girls. When she (Pattie) became upset, he said, "Calm down, we will pretend." He told them to take off their clothes and spread them around the room because other men would come in to make sure the orders were being carried out. If they didn't find everything just right, defendant said that they would work the girls over, and things would be a lot worse. The girls took off their clothes and got into the double bed while defendant was in the washroom.

When defendant came out, he said that one of the girls had to act asleep and the other had to pretend to be enjoying herself in sexual activity. Neither girl wanted to be the one to pretend, so defendant said he would flip a coin. Karen called the toss, and Pattie lost. Defendant came around to her side of the bed, took off his pants, and got into bed on her left. Karen was on her right. He reiterated his intent to "fake it." But then he said that they would have to do it, because the microphone could pick up their motions, and the people listening would be able to tell if the act were faked. He told Pattie to spread her legs. Then he got on top of her and said he had to do it. He put his penis

in her vagina. When she asked him to stop, he said that the microphone would know and he asked whether she would rather be found dead in a ditch or a field.

When he finished, defendant expressed a desire to see Pattie again, but she refused. He then went into the washroom, and the two girls dressed. When defendant left the washroom, the girls went in.. When they came out, he had gone. They went to a nearby gas station and asked to use the phone. Pattie called her home. All she was able to say was, "Mom." Karen had to continue the conversation. An officer of the South Holland Police took them to the police station and then to a hospital for an examination.

Karen Ogden, complainant, testified for the State that she was 14 years old when the alleged offenses occurred. She agreed substantially with the testimony of Pattie Pruitt. In addition, she testified as follows: In the course of their drive, defendant told her he drove the man who killed Senator Percy's daughter. When they were in the motel room bed, she faced away from defendant and Pattie, but she heard him tell Pattie to spread her legs apart and to get into different positions. She lay on the bed listening and decided defendant was not faking, so she turned over and told him to stop it. He replied, "Remember the bug, I am not doing anything." Upon leaving the motel, she and Pattie went to a gas station, where Pattie told the attendant she had been raped.

Brian Arakelian testified for the State. He was employed at a gas station in South Holland on the day in question. A couple of young girls ran up to him crying and apparently upset. One of them said she had been raped. They asked to use the phone, and he showed them where it was.

South Holland Police Sergeant, James Ashmore, testified for the State. He received a call and went to the gas station, where the girls told him what had happened, and they appeared shaken and were crying.

Mrs. Betty Pruitt testified for the State that on the day in question she received a telephone call. The caller said, "Mom", and the conversation was then continued by Karen Ogden.

Dr. Jose Montero testified for the State. He is a licensed physician who was working in the emergency room of Ingalls Memorial Hospital on the day in question. He examined Pattie on that day and took smears from her vagina and vulva. There were no lacerations on her hymen nor any evidence of injury in the genital region or the rest of her body. A laboratory report indicated that the smears were positive for spermatozoa but did not indicate whether they were present in the smear from the vulva, in the smear from the vagina, or in both. It was his opinion that a penis did enter her vagina.

Defendant testified on his own behalf. In the 2½ hours immediately prior to picking up the girls, he drank approximately 1 quart of whiskey at home. In the 2 hours prior to that, he had consumed 12 beers and 3 shots of whiskey. He picked up the girls in Oak Park, but he did not threaten to shoot them. He stopped at a gas station in Evanston. He did not tell the girls that he was a member of the Mafia, that he had been in jail, that he had applied for the police department, that he had been charged with robbery, that the car was being followed or that he had a gun.

He took the girls to a motel in South Holland. He did not say anything about a microphone or about people who would check up on him. He fell asleep in a chair in the motel room. When Pattie awakened him she was undressed. He had not instructed her to undress. He did not know where Karen went after she entered the room. He went to the washroom, and when he came out Pattie was in the bed. They conversed, but he was in no condition to remember what was said. He didn't remember what was said from the time he entered the motel room until the time he sat on the bed. Pattie asked if they would be wasting their time, whereupon he undressed and got into the bed next to Pattie. There was only one person other than himself in the double bed. He and Pattie started "playing around." She was ready to complete the act, but he ejaculated without inserting his penis into her vagina. He was drunk at the time. He did not remember whether anything was said during the foreplay, whether her legs were spread apart or were together, whether she said anything after he ejaculated, or whether he or Pattie made any noises during the sexual activity.

He used the washroom but vacated it upon Pattie's request to use it herself. He was wearing his pants at that time. He put on his shirt, told Pattie that he would be back in 5 minutes after getting some cigarettes, and left the motel. He did not remember if he zipped or buttoned his pants, if he put on his socks, or if he put on his jacket. He fell asleep in his car on a side street and did not return to the motel.

OPINION

## I.

Defendant's first contention is that the State did not prove him guilty beyond a reasonable doubt. He was convicted of indecent liberties with a child in that he performed an act of sexual intercourse, and he argues that Pattie's testimony was insufficiently corroborated and that there was a lack of clear and convincing testimony on the issue of sexual intercourse.

■■ It is well-settled that when a conviction for the crime of indecent

liberties rests upon the testimony of a child, the evidence must be corroborated or must otherwise be clear and convincing. *People v. Dunbar*, 1 Ill.App.3d 308, 272 N.E.2d 378.

■■ From our review of the record, we believe that Pattie's testimony concerning the sexual intercourse was clear and convincing and that it was corroborated by other testimony. Initially, we note that sexual intercourse has been defined as any penetration of the female sex organ by the male sex organ. (*People v. Smith*, 58 Ill.App.2d 123, 206 N.E.2d 714.) Here, defendant himself admits to being unclothed in bed, engaging in sexual foreplay with the girl, and ejaculating. Karen agreed with Pattie that the three of them were in the bed and that defendant told her friend to spread her legs. From listening to them, she concluded, despite defendant's denials, that he was in fact engaging in sexual intercourse with Pattie, and she told him to stop. Although she did not see the alleged penetration of Pattie's sex organ by defendant's, her testimony corroborates Pattie's in many respects, particularly as to the location of the three people in the bed and the conversations that occurred there. In *People v. Smith*, 58 Ill.App.2d 123, 206 N.E.2d 714, defendant's conviction for rape was affirmed despite the fact that the complainant's mother, who was pinned under her, admitted that she could not see the rape. Similarly, Karen's testimony lends credence to Pattie's.

Further corroboration of Pattie's testimony is provided by Dr. Montero, who testified that traces of spermatozoa were found in the smears taken from Pattie's vaginal area (although not necessarily in the vagina itself); and that it was his professional opinion that sexual intercourse had occurred. To a lesser extent, she was corroborated by Arakelian, who testified that when the girls came to his gas station "they were both crying and they were real upset" and that one told him she had been raped.

Pattie described in detail the events in the motel leading up to and following the offense. She indicated no uncertainty as to what occurred in bed, and she testified on two occasions that defendant had inserted his penis in her vagina.

Defendant also argues that Pattie's story is implausible and unbelievable because of inconsistencies in her testimony and in that of the other State's witness. We need not cite authority for the proposition that it is for the jury to determine the credibility of the witnesses and the plausibility of their accounts. Furthermore, we think the inconsistencies pointed out by defendant do not appear to relate to material elements of the crime, but rather to collateral matters. The mere fact of minor

conflicting evidence does not justify reversal. *People v. Davis,* 10 Ill.2d 430, 140 N.E.2d 675.

■■ For the reasons stated, we believe defendant was proven guilty beyond a reasonable doubt.

## II.

Defendant's second argument is that he was prejudiced by the testimony of the two girls concerning defendant's alleged representations that he had been kicked off the police force; had stolen money; worked for the Mafia; had been put in jail; and had driven the person who killed Senator Percy's daughter. In addition, he claims that the following comment by the prosecutor in his closing argument was improper and prejudicial:

> "He said that he had been convicted of robbery and that he had been in jail and I think you might agree that this lends some credence to the fact that this is indeed the kind of person that would be carrying a gun and would not be afraid to use that weapon."

■■ Initially, we note that although defendant denied in direct examination that he made the representations to the girls, his counsel did not object to the introduction of the evidence or to the closing argument. A party cannot sit by and permit evidence to be introduced without objection and on appeal urge an objection which might have been obviated error if made at the trial. (*People v. Thompson,* 48 Ill.2d 41, 268 N.E.2d 369.) Because defendant elected not to object and treated the evidence as properly admitted at trial, his right to raise this issue on appeal is waived.

■■ Furthermore, the use by defendant of force, or the threat of force and acts performed against the will of the victim, are elements in the other charges of kidnapping, aggravated kidnapping, and rape. (Ill. Rev. Stat. 1969, ch. 38, pars. 10—1, 10—2, 11—1.) Thus, the allegedly improper evidence was relevant for the purpose of proving whether these crimes were committed as charged. Evidence that defendant in fact committed other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. Cole,* 29 Ill.2d 501, 194 N.E.2d 269.) A *fortiori,* evidence that defendant represented he had committed other offenses is admissible when, as here, it is relevant. The prosecutor's comment is permissible as a reasonable inference drawn from admitted evidence.

■■ Moreover, the jury returned a verdict of not guilty on the charges of rape, kidnapping, and aggravated kidnapping, in all of which the use

or threat of force and acts taken against the will of the victim are elements. He was convicted of two crimes not containing these elements; thus, assuming arguendo that there may have been error in the admission of this testimony and the prosecutor's comment, we believe that no prejudice resulted from it. A reviewing court does not reverse a conviction merely because error was committed unless it appears that justice has been denied or that the verdict of guilty may have resulted from the error. *People v. Morehead*, 45 Ill.2d 326, 259 N.E.2d 8.

## III.

■■ Defendant's final contention is that the sentence of 6 to 10 years is excessive. We recognize that the legislature chose to make the crime of indecent liberties a Class 1 felony under the Unified Code of Corrections, and this indicates legislative displeasure with this type of crime. (*See People v. Brown*, 107 Ill.App.2d 406, 246 N.E.2d 61.) But the Code states that "for a Class 1 felony, the minimum term *shall be* 4 years *unless* the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) (Emphasis added.) The offense committed here did not involve violence; the victim's hymen had no lacerations; her body was free from bruises; and her life was not endangered in the commission of the offense. Indeed, the jury acquitted defendant of all crimes charged which involved the use of force or the threat of force. He was young (22 years old), with no prior criminal record. He had been fairly steadily employed, although by a variety of employers. He was terminated by one for lack of work and resigned once for unknown reasons. His school record showed fair conduct and grades, poor to fair attendance, and unsatisfactory deportment.

Accordingly, the judgment is affirmed, but defendant's sentence is modified to a term of 4 to 10 years.

Affirmed as modified.

DRUCKER and LORENZ, JJ., concur.