THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT GREVE *et al.*, Defendants-Appellants.

Second District   No. 79-128

Opinion filed April 22, 1980.—Rehearing denied June 2, 1980.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, Lawrence Greve, age 29 and his brother, Robert Greve, age 16, were convicted of rape. Lawrence Greve was sentenced to 10 years imprisonment and Robert Greve was sentenced to 6 years imprisonment.

The defendants contend they were not proven guilty of rape beyond a reasonable doubt because the complainant's testimony was directly contradicted on so many points that it fails to amount to sufficient evidence to support the conviction.

The minor defendant further contends that the trial court erred when it refused to vacate his waiver of juvenile jurisdiction and that he was denied the effective assistance of counsel.

The complainant, who was 20 years old, was described by a witness as, in certain situations, acting younger than her years. On the evening in question she went to Sparky's Tavern near Mylith Park at Slocum Lake around 9:30 in the evening. The defendants seated themselves on either side of the complainant, engaged her in conversation and bought her some beer.

A witness testified that Lawrence Greve asked him how old the complainant was. The witness responded, "that I believed that she was 20 or 21, but that I believe I said she wasn't all there so she probably didn't seem quite that old."

When asked if there were any further conversation with defendant, Lawrence Greve, the witness replied:

"Yes, he then stated if she was over 18 he had nothing to worry about, couldn't get arrested, and I said well, you are missing the point. She is not responsible and he should leave her alone."

The complainant had about six beers. She asked the Greve brothers if they would give her a ride home, although "home" was only a few blocks away, and Lawrence Greve replied that his car was laid up, but that he and his brother would walk her home. The three left the tavern at closing time. The complainant testified that Lawrence Greve suggested that they go and sit on the beach but that she wanted to go home. She testified that the defendants each grabbed her by a wrist and dragged her down to the beach where Lawrence held her wrists while Robert raped her. Lawrence Greve then got on top of her but failed to penetrate her when he was interrupted by the arrival of Michael Walker. Mr. Walker, a nearby resident, testified that he was awakened and believed he heard a cry for help. He went to investigate, walking from his house to the beach, and he

heard crying. He saw a man standing close to the lake and a couple on the ground nearby. The woman was lying on the ground and a man was on top of her. They were not fully clothed. The woman was crying. The man standing by the lake told Mr. Walker that "it was an argument between Bob and Barbara, that they were boy friend and girl friend and it was none of [his] business." The girl said, "[h]e is not my boy friend. They made me come down here." The girl got up and started putting her clothes on. Mr. Walker told the two men he was taking her home. They walked off. Mr. Walker called the police who came to investigate. Mr. Walker identified the defendants as the men he observed that night.

A physician examined the complainant and noted there was the unusual appearance of sand on her external genitalia. The outer part of her vagina was swollen, reddened and appeared to have been exposed to considerable physical trauma. There was fresh bleeding of the cervix. The complainant told the doctor that two men alternated holding her down and having sexual intercourse. She indicated that while one was having sexual intercourse, the other one was holding her down. A vaginal swab revealed the presence of spermatozoa.

The defense was consent. Lawrence Greve testified that the complainant asked him to walk her home. He walked out of the bar with her and purchased a marijuana cigarette. They walked to the beach to smoke it. Robert Greve joined them and smoked some of the marijuana cigarette. They talked. Lawrence Greve asked her if she wanted to make love. She smiled. He asked his brother, Robert, to leave. They were having intercourse when Robert returned to say, "There is some guy walking down the street by the park." A man came up and said, "What's going on down there?" The complainant got mad and told Lawrence Greve, "I told you we should quit." She pushed him off and started putting on her clothes. The defendant denied dragging the complainant to the beach or forcing her to have intercourse. The Greve brothers walked home. Lawrence Greve lost his wallet at the beach. The next day he called the police and reported it missing. He told the police he lost it while "having relations" with a woman at the beach.

Robert Greve testified he had six or seven beers at Sparky's bar. He sat at the bar with his brother and the complainant for four to five hours. The complainant and his brother were kissing at the bar. They left the tavern at closing time and he saw his brother buy a marijuana cigarette from a person in a car outside the tavern. He followed his brother and the complainant to the beach a block and a half from the tavern. The three smoked the cigarette and his older brother asked him to take a walk. Robert Greve walked away 20 to 30 feet. He saw somebody walking in the street. The man walked up and inquired as to what was going on. Robert told the man it was "between a boyfriend and girlfriend

relationship." Lawrence and the girl got up. The man who had interrupted them walked off with the girl; Lawrence and Robert walked home.

Robert Greve was 16 at the time of the occurrence and as a result thereof the State filed a petition to have him declared a delinquent minor and then petitioned the court for an order permitting prosecution of the minor under the criminal laws. At the hearing on this petition, the State's Attorney asked leave to withdraw the "transfer" petition, indicating the State would elect to proceed against him as a juvenile. That motion was never ruled on by the court because private counsel who represented Robert Greve moved the court that the criminal prosecution be ordered and the juvenile petition be dismissed pursuant to section 2—7(5) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(5)). The court granted defense counsel's motion and a jury trial date was subsequently set. Private counsel then withdrew from the case and the public defender undertook the defense. The public defender filed a motion requesting a rehearing of the motion transferring the defendant from the juvenile court to the criminal prosecution. The motion alleged that defendant did not get the benefit of a hearing under section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)) and was denied the effective assistance of counsel. This motion was heard and denied 45 days before the day the jury trial commenced.

■■ Section 2—7 of the Juvenile Court Act sets forth two methods by which a transfer from juvenile to criminal court may be effectuated. Under one method, a hearing is held upon motion of the State's Attorney pursuant to section 2—7(3). The court in conducting this transfer hearing is directed by subsection (3)(a) to consider the factors set forth therein in making its determination as to whether to permit prosecution under the criminal laws. Under the second method, pursuant to section 2—7(5), the minor, with the consent of his counsel, may file a motion that criminal prosecution be ordered. Under this procedure, no hearing is required by statute. The statute states that if such a motion is filed, the court shall enter its order accordingly.

Section 2—7(5) of the Juvenile Court Act provides as follows:

"If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the minor, with the consent of his counsel, may, at any time before commencement of the adjudicatory hearing, file with the court a motion that criminal prosecution be ordered and that the petition be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. If such a motion is filed as herein provided, the court shall enter its order accordingly." (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(5).)

In paraphrasing this section, the supreme court in *People v. Sprinkle* (1974), 56 Ill. 2d 257, 260, stated that "if said motion is filed, then the court shall so order." It thus appears that not only is no hearing required when transfer is to be made upon defendant's motion, but that the court lacks discretion as to whether or not to grant the motion made in accordance with section 2—7(5). Under the statute, it is the minor, with the consent of his counsel, who has been granted the option to be tried under the criminal laws of this State. The nature of the discretion which is vested in the minor to be tried as an adult, subject only to the consent of his counsel, was stated by the supreme court in *People v. Jiles* (1969), 43 Ill. 2d 145, 149, as follows:

> "Under the Illinois Juvenile Court Act the juvenile and his attorney have an uncontrolled discretion to choose to be proceeded against in the criminal court. They may make that choice without regard to any considerations relating to the public interest, or even to the ultimate best interest of the juvenile. No judge has any authority to interfere with that choice."

It is apparent that the factors set forth in subsection (3)(a) of section 2—7 have no application to a transfer pursuant to subsection (5).

The defendant's original motion to be transferred from juvenile court to the division for criminal prosecution was properly granted by the trial judge.

The question presented here is whether the juvenile, who has once waived the protections of the Juvenile Court Act and elected to be prosecuted as an adult in the criminal court can, with the consent and on the advice of his counsel, change his mind and be transferred back to juvenile proceedings. The trial judge believed that he had no discretion, that once a waiver of juvenile proceedings was accepted that the court could not re-examine the matter at the juvenile's request. With this we disagree and reverse the cause as to Robert Greve for further proceedings under the Juvenile Court Act. Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*

Forty-seven days before the jury trial commenced, Robert Greve filed a motion asking the trial court to grant him a full hearing pursuant to the provisions of subsection (3) of section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)). He alleged that private counsel had failed to properly inform him of the possible benefits that might be available to him if he was proceeded against under the Juvenile Court Act. At the hearing on this motion, the trial judge indicated that although Robert may not have been properly admonished and advised by his attorney prior to consenting to prosecution as an adult under section 2—7(5), that the trial court had "no right to go into it any further."

Since Robert's motion to have his case transferred back to the

Juvenile Court appears to have been made in good faith on the advice of his new attorney and since it was not interposed for the purpose of delay and no delay in the disposition of this case would have resulted therefrom, we hold it was error for the court not to consider the motion of Robert and to have granted it under the facts adduced at the hearing.

As to Lawrence Greve, the only issue presented is whether the evidence was sufficient to convict beyond a reasonable doubt. We believe it was. The testimony of Michael Walker and the examining physician sufficiently confirmed the complainant's story to establish a basis for conviction of rape, beyond a reasonable doubt. *People v. Simental* (1973), 11 Ill. App. 3d 537; *People v. Graham* (1978), 60 Ill. App. 3d 1034; *People v. Thompson* (1978), 57 Ill. App. 3d 134.

As to Lawrence Greve, the judgment of the circuit court of Lake County is affirmed. As to Robert Greve, the judgment of the circuit court of Lake County is reversed and the cause remanded to the trial court for further proceedings in accordance with the Juvenile Court Act.

Affirmed in part; reversed in part and remanded.

LINDBERG and WOODWARD, JJ., concur.